[No. D058568. Fourth Dist., Div. One. June 2, 2011.]

GRANT L. CLARK, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
VERISIGN, INC., et al., Real Parties in Interest.

**Counsel**

Higgs, Fletcher & Mack, John Morris, Steven J. Cologne, Thomas W. Ferrell, Sam Sherman and Victoria E. Fuller for Petitioner.

No appearance for Respondent.

Paul, Hastings, Janofsky & Walker, Nancy L. Abell, Thomas A. Zaccaro, Eleanor K. Mercado and Kai S. Bartolomeo for Real Parties in Interest.

OPINION

**McDONALD, J.**—Grant L. Clark seeks a writ of mandate directing the Superior Court of San Diego County to vacate its November 8, 2010, order disqualifying Clark's chosen law firm of Higgs, Fletcher & Mack LLP (Higgs) from continuing to represent Clark in his action against real parties in interest VeriSign, Inc., et al. (VeriSign). VeriSign sought the disqualification order because Higgs allegedly received from Clark numerous documents protected by the attorney-client privilege held by VeriSign, and Higgs thereafter (1) excessively reviewed the documents, (2) did not immediately return the documents and (3) affirmatively employed the documents to pursue Clark's lawsuit against VeriSign. VeriSign asserted these actions violated Higgs's obligations under *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807 [68 Cal.Rptr.3d 758, 171 P.3d 1092] (*Rico*) and *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 [82 Cal.Rptr.2d 799] (*State Fund*) and warranted disqualification of Higgs as Clark's counsel in this action. The trial court found, on disputed facts, Higgs had received and excessively reviewed privileged documents, disqualification was warranted because there was a genuine likelihood Higgs's conduct could affect the outcome of the litigation, and the paramount concern of protecting the public trust in the administration of justice and integrity of the bar outweighed any infringement of Clark's right to the counsel of his choice.

In this writ proceeding, Clark asserts the disqualification order was an abuse of discretion. Clark's principal argument is that VeriSign's claim of privilege as to the contested documents is "highly suspect," and he asserts there was no substantial evidence on which the court could conclude Higgs violated its obligations under *Rico* and *State Fund* until it had first conducted an in camera review of the contested documents to determine whether the documents were *in fact* privileged. Second, Clark asserts that, even assuming some or all of the documents were privileged, there is no evidence to support the conclusion that Higgs did not properly discharge its obligations under *Rico* and *State Fund*. Finally, Clark asserts that disqualification was an overly draconian remedy because there was no evidence to support the conclusion that Higgs's review of the privileged documents provided Clark with any

unfair advantage that would undermine the integrity of the judicial proceedings, and any taint could have been cured by a protective order, thereby preserving Clark's right to counsel of his choice.

I

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Parties*

VeriSign provides Internet infrastructure services. Clark is an active member of the California State Bar with experience in litigation, and has also acted as in-house and general counsel for corporations.

### B. *The Parties' Relationship*

In late September 2007 VeriSign hired Clark as its chief administrative officer. In conjunction with his employment, Clark signed VeriSign's nondisclosure agreement, which included a provision that he would not remove VeriSign's confidential or privileged information and would return all confidential or privileged information to VeriSign on termination of his employment.

In late 2008, Clark was informed by VeriSign that Clark's position was being eliminated. Clark's employment was terminated effective December 31, 2008. In January 2009, Clark filed his lawsuit against VeriSign. Clark was represented by Higgs.

### C. *The March and April 2009 Correspondence*

On March 25, 2009, Mr. Cologne (an attorney with Higgs representing Clark in the lawsuit against VeriSign) sent a letter to VeriSign's counsel stating Clark intended to assert an additional claim based on allegations that "deception and delay [surround] the termination of [William] Roper," VeriSign's former chief executive officer. Cologne's letter stated the deception "played out against the backdrop of a June 4, 2008[,] internal memorandum from Ken Bond, Senior Vice President in charge of investor relations."

Counsel for VeriSign suspected Cologne was referring to an e-mail sent by Bond (senior vice-president in charge of investor relations) to Richard

Goshorn (VeriSign's general counsel) and Susan Insley (VeriSign's director of internal audit acting under the direction of VeriSign's law department) concerning a confidential internal investigation. VeriSign, believing the so-called "Bond memo" was a privileged communication Clark had improperly taken from VeriSign in violation of the nondisclosure agreement,[1] demanded in a letter to Cologne dated March 31, 2009, that Clark immediately return all of VeriSign's documents, including any attorney-client privileged information, and to cease and desist using that information or documents. When Cologne was silent in response to VeriSign's demand,[2] VeriSign's attorney again wrote to Cologne reiterating its demand that Clark return confidential or privileged documents and cease using the documents, and specifically referred to *Rico* and the obligations imposed by that case. Clark and Higgs responded by denying any improper conduct, and apparently did not return any materials to VeriSign.

### D. The Discovery of Clark's Possession of Privileged Documents

In mid-February 2010, Clark produced documents pursuant to VeriSign's discovery demand. VeriSign thereafter determined Clark's production included numerous privileged documents, many of which were prominently marked "Attorney-Client Privileged," "Prepared at Request of Counsel," and/or "Highly Confidential." VeriSign also determined Clark was in possession of other confidential documents taken in violation of the nondisclosure agreement.

In mid-March 2010, VeriSign's counsel wrote to Higgs demanding Clark return the privileged materials (which it identified by Bates numbers), return the other documents VeriSign contended were confidential or proprietary, and cease using any privileged or confidential information to pursue Clark's lawsuit. Clark's response did not include an agreement to return the privileged documents. Although Clark subsequently agreed to return the documents he characterized as "irrelevant," and later agreed to destroy most of the documents VeriSign identified as protected by the attorney-client privilege, Higgs thereafter indicated it would be unable to destroy the documents because VeriSign's motion to compel Clark to answer certain deposition

---

[1] VeriSign was not certain Higgs was in possession of the Bond memo because a copy was not attached to Cologne's letter, and it was not until VeriSign deposed Clark in October 2010 that Clark confirmed the "memorandum" to which Cologne referred was in fact the Bond memo.

[2] Cologne's response was limited to asking whether each of VeriSign's board members was (1) aware of VeriSign's allegations, and (2) agreed with VeriSign's attorney's demand for return of the documents.

questions required that he retain those documents for use in opposing the motion to compel answers. By the fall of 2010, Higgs had neither returned nor destroyed the allegedly privileged documents.

### E. *The Use of the Privileged Documents*

In the fall of 2010, the court granted VeriSign's motion to compel Clark to answer certain deposition questions. At his October 1, 2010, deposition, Clark conceded certain documents contained privileged information but stated that his counsel would decide whether to seek their admission at trial. More importantly, Clark conceded he used the Bond memo as the basis for one of the securities fraud claims he was pursuing against VeriSign, and apparently was relying on another privileged document in support of his breach of contract and securities fraud claims.

### F. *The Motion to Disqualify*

Promptly after completing Clark's deposition, VeriSign moved to disqualify Higgs and for ancillary relief. VeriSign argued Clark and Higgs had improperly obtained, retained, reviewed and used privileged documents, and had obtained an improper advantage from that conduct, in violation of the requirements imposed by *Rico, supra,* 42 Cal.4th 807 and *State Fund, supra,* 70 Cal.App.4th 644. In support of the motion, VeriSign provided (among other things) a declaration from Goshorn attesting to the circumstances surrounding (and privileged nature of) the disputed communications.

Clark opposed the motion, asserting the standards imposed and remedies available under *State Fund* and *Rico* have no application unless the documents are *inadvertently* provided to opposing counsel by the attorneys for the party holding the privilege. Clark alternatively argued that no sanctions may be imposed absent a showing the documents obtained by Higgs were actually privileged, and the showing made by VeriSign was insufficient to show that the dominant purpose of each communication was for legal, rather than business, advice. Clark finally asserted Higgs did not misuse any of the material obtained and there was no proof VeriSign had suffered any disadvantage as a result of Higgs's review of the documents.

### G. *The Challenged Disqualification Order*

The trial court granted the motion to disqualify Higgs. The court first found Higgs had received numerous documents from Clark subject to the attorney-client privilege, some of which "bore obvious indicia of the privilege held by

VeriSign," were "explicitly marked as privileged by Mr. Clark while he was employed by VeriSign," and/or were conceded to be privileged by Clark.[3]

The court, after noting Higgs had a "duty not to review these documents more than was reasonably necessary to make the determination that they are privileged and to immediately notify VeriSign that they were in possession of VeriSign's privileged documents," specifically found that "[d]espite repeated warnings from VeriSign's counsel, [Higgs's] review exceeded this limit" and also found "[Higgs] did not immediately notify VeriSign that [it was] in possession of the documents."

The court concluded Higgs's conduct warranted disqualification as well as other ancillary relief. The court recognized that when ruling on a disqualification motion, which requires resolution of the tension between the client's right to choose his or her counsel and the need to maintain ethical standards, the paramount concern must be to preserve the public trust in the scrupulous administration of justice. The court resolved the conflict by concluding Clark's right to counsel of his choice "does not trump the policy behind protecting the attorney-client privilege from being undermined." Accordingly, the court ordered that (1) Higgs be disqualified, (2) the documents be returned, and (3) Higgs be enjoined from discussing the contents of the documents with anyone or providing Higgs's work product in the action to either Clark or any representative of Clark. The court ruled these measures were prophylactic, not punitive, and were necessary to protect VeriSign's rights as well as the integrity of the judicial proceedings, and found there " 'exists *a genuine likelihood that the . . . misconduct of [Higgs] will affect the outcome of the proceedings before the court.*' " (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 467 [51 Cal.Rptr.3d 561].)

## H. *The Writ Petition*

Clark timely filed this writ petition, requesting we vacate the order disqualifying Higgs from acting as Clark's attorney. We issued an order to show cause, and the parties have fully briefed this matter.

---

[3] The court ordered Higgs to return all hard copies of 36 specified documents, which it identified by the Bates stamp numbers, and erase all electronic copies of those documents. The 36 documents the court ordered Higgs to return included all of the documents VeriSign, in its numerous letters to Higgs, had consistently contended were privileged.

In this writ proceeding, Clark raises three claims. First, he argues VeriSign's claim of privilege as to the contested documents is "highly suspect," and asserts it was improper for the court to conclude Higgs violated its obligations under *Rico* without reviewing the contested documents to determine whether they were in fact privileged. Second, Clark asserts that, even assuming some or all of the documents were in fact privileged, there is no evidence to support the conclusion that Higgs did not properly discharge its obligations under *Rico*. Finally, he asserts disqualification was an overly draconian remedy because there was no evidence to support the conclusion that Higgs's review of the privileged documents provided Clark with any unfair advantage that would undermine the integrity of the judicial proceedings, and any taint or prejudice could have been cured by a protective order preserving Clark's right to counsel of his choice.

## II

## LEGAL STANDARDS

### A. Standard of Review

A trial court's ruling on a disqualification motion is reviewed under the deferential abuse of discretion standard. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143–1144 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee*); *McPhearson v. Michaels Co.* (2002) 96 Cal.App.4th 843, 851 [117 Cal.Rptr.2d 489]; *City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 322 [117 Cal.Rptr.2d 125].) "In exercising its discretion, the trial court must make a reasoned judgment that complies with applicable legal principles and policies." (*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1403 [82 Cal.Rptr.2d 326] (*Strasbourger*); accord, *McPhearson*, at p. 851.) "The order is subject to reversal only when there is no reasonable basis for the trial court's decision." (*Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856, 860 [80 Cal.Rptr.2d 634] (*Federal Home*).)

"In deciding whether the trial court abused its discretion, '[w]e are . . . bound . . . by the substantial evidence rule.' " (*Strasbourger, supra*, 69 Cal.App.4th at p. 1403.) The trial court's order is " 'presumed correct; all intendments and presumptions are indulged to support [it]; conflicts in the declarations must be resolved in favor of the prevailing party, and the trial

court's resolution of any factual disputes arising from the evidence is conclusive.' " (*Ibid.*; accord, *Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 728 [135 Cal.Rptr.2d 415].) Hence, we presume the trial court found in VeriSign's favor on "all disputed factual issues." (*Strasbourger*, at p. 1403.) Further, "where there are no express findings, we must review the trial court's exercise of discretion based on implied findings that are supported by substantial evidence." (*Federal Home, supra*, 68 Cal.App.4th at p. 860.) "In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable." (*Ibid.*) "If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence." (*SpeeDee, supra*, 20 Cal.4th at p. 1143; accord, *City National Bank v. Adams, supra*, 96 Cal.App.4th at p. 322.)

### B. *Legal Standards for Disqualification*

A trial court's authority to disqualify an attorney derives from its inherent power to "control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (Code Civ. Proc., § 128, subd. (a)(5); see *SpeeDee, supra*, 20 Cal.4th at p. 1145; see also *Oaks Management Corporation v. Superior Court, supra*, 145 Cal.App.4th at p. 462.) "The power is frequently exercised on a showing that disqualification is required under professional standards governing . . . potential adverse use of confidential information." (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1723–1724 [20 Cal.Rptr.2d 756].)

A disqualification motion involves a conflict between a client's right to counsel of his or her choice, on the one hand, and the need to maintain ethical standards of professional responsibility, on the other. (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846 [43 Cal.Rptr.3d 771, 135 P.3d 20].) Although disqualification necessarily impinges on a litigant's right to counsel of his or her choice, the decision on a disqualification motion "involves more than just the interests of the parties." (*SpeeDee, supra*, 20 Cal.4th at p. 1145.) When ruling on a disqualification motion, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that

affect the fundamental principles of our judicial process." (*SpeeDee*, at p. 1145; see also *Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 705–706 [3 Cal.Rptr.3d 877].)

The *SpeeDee* court recognized that one of the fundamental principles of our judicial process is the attorney-client privilege: "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system. The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring ' "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." [Citation.]' [(Quoting *Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599 [208 Cal.Rptr. 886, 691 P.2d 642].)]" (*SpeeDee, supra*, 20 Cal.4th at p. 1146.) Because it is this privilege that was the touchstone for the trial court's disqualification ruling, we outline the rules developed for safeguarding that privilege.

### C. Rico *and* State Fund

█ In *State Fund, supra*, 70 Cal.App.4th 644, the court evaluated the ethical obligations of a lawyer when that lawyer comes into possession of privileged materials without the holder of the privilege having waived it. (*Id.* at pp. 654–655.) The court, to "protect the sanctity of the attorney-client privilege and to discourage unprofessional conduct" (*id.* at p. 657), ruled that: "the obligation of an attorney receiving privileged documents due to the inadvertence of another is as follows: When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged." (*Id.* at p. 656.)

█ In *Rico,* the court adopted the obligations articulated in *State Fund* and extended them to materials protected by the attorney work product privilege, noting those obligations were rooted in the attorney's obligation to " 'respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice.' " (*Rico, supra*, 42 Cal.4th at p. 818.) *Rico* also addressed the question of remedy when the attorney, having obtained privileged documents, did not comply with those obligations. *Rico* echoed *State Fund*'s caution that " ' "[m]ere exposure" ' to an adversary's confidences is insufficient, standing alone, to warrant an attorney's disqualification" (*Rico,* at p. 819, quoting *State Fund, supra*, 70 Cal.App.4th at p. 657),

because *Rico* agreed such a "a draconian rule . . . ' "[could] nullify a party's right to representation by chosen counsel any time inadvertence or devious design put an adversary's confidences in an attorney's mailbox." ' " (*Rico*, at p. 819.) *Rico* also stated, however, that " 'in an appropriate case, disqualification might be justified if an attorney inadvertently receives confidential materials and fails to conduct himself or herself in the manner specified above, assuming other factors compel disqualification.' " (*Ibid.*)

## III

## ANALYSIS

### A. *Substantial Evidence Supports the Finding Higgs Received Privileged Documents from Clark*

The trial court expressly found Clark gave Higgs numerous documents subject to the attorney-client privilege. Substantial evidence supports this finding: some of the documents were explicitly designated *by Clark* as attorney-client privileged while he was employed by VeriSign; Higgs acknowledged (during the May through July correspondence between counsel attempting to resolve the document issues) that a substantial portion of the documents were privileged; and Higgs conceded at oral argument below that some of the documents were privileged. Additionally, for the documents Clark did not concede were privileged, VeriSign's counsel provided a declaration stating the identities of the parties to each of the sets of communications (one of whom was invariably either an in-house attorney or outside counsel) and the general nature of the purpose of the communication (all of which involved obtaining legal advice on a variety of subjects).

■ In *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725 [101 Cal.Rptr.3d 758, 219 P.3d 736] (*Costco*), the court explained that when a trial court examines a claim that a communication is protected by the attorney-client privilege, "[t]he party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., *a communication made in the course of an attorney-client relationship*. [Citations.] Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." (*Id.* at p. 733, italics added.) Here, VeriSign's showing provided substantial evidence from which the court could have found each of the contested documents involved communications between a VeriSign employee and a VeriSign attorney in the course of an attorney-client relationship.

■ Clark's principal contention is that an in camera review of the documents was a *prerequisite* to determining whether the documents were in fact privileged. Clark asserts that under *2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377 [7 Cal.Rptr.3d 197] (*2,022 Ranch*) the determination of privilege turns on the "dominant purpose" of each communication. Clark relies on the portion of the *2,022 Ranch* opinion in which the court stated: "In certain instances it is difficult to determine if the attorney-client privilege . . . attaches to a communication, particularly where there may be more than one purpose for that communication: ' " 'Where it is clear that the communication has but a single purpose, there is little difficulty in concluding that the privilege should be applied or withheld accordingly. If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney "in the course of professional employment" and one not related to that purpose, the question presented to the trial court is as to *which purpose predominates* . . . .' " [Citation.]' (*Travelers Ins. Companies v. Superior Court* (1983) 143 Cal.App.3d 436, 452 [191 Cal.Rptr. 871], italics added.) This 'dominant purpose' test not only looks to the dominant purpose for the communication, but also to the dominant purpose of the attorney's *work*. [Citations.] Thus, 'the attorney-client privilege [would] not apply without qualification where the attorney was merely acting as a negotiator for the client [citation], or merely gave business advice [citation], or was merely acting as a trustee for the client [citation].' " (*2,022 Ranch*, at pp. 1390–1391.)

■ Clark asserts that, because the dominant purpose of the communications could only be ascertained by examining the contents of each specific communication in camera, and no examination proceeding was involved here, there was no evidence to permit the conclusion any of the documents were privileged.[4] However, Clark's argument ignores that the *Costco* court, after observing "Evidence Code section 915 prohibits disclosure of the information claimed to be privileged as a confidential communication between attorney and client 'in order to rule on the claim of privilege' " (*Costco, supra,* 47 Cal.4th at pp. 731–732), stated "because the privilege protects a *transmission* irrespective of its content, there should be no need to examine the content in order to rule on a claim of privilege" (*id.* at p. 739). *Costco* went on to state

---

[4] Clark also cites *Chicago Title Ins. Co. v. Superior Court* (1985) 174 Cal.App.3d 1142, 1151 [220 Cal.Rptr. 507] for the proposition that the "dominant purpose" test is particularly important when examining communications involving in-house counsel because the attorney-client privilege is inapplicable when the business portions of an in-house attorney's communication are not clearly separable from the legal portions of the communication. However, the cited pages contain no such discussion. Moreover, the core conclusion of the *Chicago Title* court was that "given the peculiar surrounding circumstances in the case at bench, the . . . attorney-client privilege [was] impliedly waived." (*Id.* at p. 1154.) *Chicago Title* has no bearing on the present action because there is no claim that VeriSign waived the privilege as to any of the documents.

that, "[b]ecause we hold that a court may not order disclosure of a communi-cation claimed to be privileged to allow a ruling on the claim of privilege, we disapprove two cases plaintiffs have cited in support of the trial court's orders," including *2,022 Ranch.* (*Costco*, at p. 739.) *Costco*, reviewing the approach advocated in *2,022 Ranch*, noted the *2,022 Ranch* court: "distin-guished communications reporting the results of factual investigations from those reflecting the rendering of legal advice, held only the latter were privileged, and ordered the trial court to review each of the communications to determine its dominant purpose. [Citation.] In this respect, the court erred. The proper procedure would have been for the trial court first to determine the dominant purpose *of the relationship* between the insurance company and its in-house attorneys, i.e., was it one of attorney-client or one of claims adjuster-insurance corporation (as some of the evidence suggested, [citation]). The corporation, having the burden of establishing the preliminary fact that the communications were made during the course of an attorney-client relationship [citation], was free to *request* an in camera review of the communications to aid the trial court in making that determination, but the trial court could not *order* disclosure of the information over the corpora-tion's objection. If the trial court determined the communications were made during the course of an attorney-client relationship, the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means. If the trial court instead concluded that the dominant purpose of the relationship was not that of attorney and client, the communications would not be subject to the attorney-client privilege and therefore would be generally discoverable." (*Costco*, at pp. 739–740.)

■ We interpret *Costco*'s disapproval of *2,022 Ranch* as making clear that, to determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication. Under that approach, when the party claiming the privilege shows the dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege.

Employing *Costco*'s approach, there was substantial evidence to support the trial court's finding that *all* of the disputed communications, including the so-called Bond memo, were privileged communications because VeriSign's declarations established all of the disputed communications involved an officer or employee of VeriSign transmitting a communication to an attorney for VeriSign (either Goshorn[5] or other attorneys) or persons working at the

---

[5] VeriSign produced evidence that Goshorn was VeriSign's general counsel, and his primary responsibility was to serve as VeriSign's chief legal officer to provide legal counsel and advice to VeriSign and its officers and employees. Clark apparently provided no competent evidence

attorney's direction. Although Clark continues to assert the Bond memo e-mail was not privileged, he conceded below that the Bond memo was sent by an employee of VeriSign to both Goshorn (VeriSign's attorney) and Insley, who (as the director of internal audit for VeriSign) was reporting directly to Goshorn.[6] Clark's argument—that the Bond memo was not privileged because " 'the *dominant purpose of the e-mail* was Mr. Bond's expression of frustration . . . concerning a VeriSign investigation' "—appears irreconcilable with *Costco*'s admonition that the relevant inquiry is not the *content* of the communication but is instead the *relationship* of the communicators. We conclude there was substantial evidence to support the trial court's finding that all of the disputed communications were privileged communications.

B. *Substantial Evidence Supports the Finding that Higgs Excessively Reviewed Privileged Materials*

Higgs, after coming into possession of the privileged documents, was obligated not to review these documents more than was reasonably necessary to make the determination that they were privileged and to immediately notify VeriSign that it was in possession of VeriSign's privileged documents. The trial court found Higgs violated those obligations because (1) "[d]espite repeated warnings from VeriSign's counsel, [Higgs's] review exceeded this limit," and (2) "[Higgs] did not immediately notify VeriSign that [it was] in possession of the documents." Clark appears to argue that no substantial evidence supports the conclusion that Higgs excessively reviewed privileged documents in violation of the obligations imposed by *State Fund* and *Rico*. Clark's argument appears to be that Higgs obtained the documents from Clark properly, made no effort to hide that the documents were in its possession, met and conferred with VeriSign to resolve VeriSign's claims of privilege, and "responsibly sequestered" the disputed documents while this process was ongoing without excessively reviewing the documents, thus complying with its obligations.

 As a preliminary matter, Clark has waived this contention because, rather than presenting a summary of *all* of the evidence presented at the hearing below most favorably to the judgment, Clark only discusses the evidence *he* presented on this issue.[7] "Failure to set forth [all of] the material evidence on an issue waives a claim of insufficiency of the evidence."

suggesting Goshorn ever acted in a nonlegal capacity for VeriSign, or that he was acting in a nonlegal capacity with respect to the communications at issue in this matter.

[6] VeriSign's showing below confirmed Insley was assisting an investigation under the direction and control of VeriSign's law department and, in that capacity, had interviewed Bond in connection with the "Roper Investigation."

[7] In Clark's brief filed in connection with this writ proceeding, the argument asserting Higgs's handling of the documents was proper cites *only* to the evidence contained (1) in *Clark's* declaration filed in opposition to the disqualification motion, (2) in the declarations of

(*Brockey v. Moore* (2003) 107 Cal.App.4th 86, 96 [131 Cal.Rptr.2d 746].) When parties assert a challenge to the trial court's decision based on the absence of substantial supporting evidence, they " 'are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*. Unless this is done the error is deemed to be waived.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) By discussing only evidence tending to support his position, Clark has waived his right to challenge the sufficiency of the evidence to support the court's conclusions. (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [19 Cal.Rptr.3d 416]; *Brockey v. Moore, supra,* 107 Cal.App.4th at pp. 96–97.)

More importantly, even if the argument had not been waived, there is substantial evidence that Higgs's actions violated *State Fund* and *Rico*. Those cases make clear that "a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged . . . [must (1)] refrain from examining the materials any more than is essential *to ascertain if the materials are privileged,* and [(2)] immediately notify the sender that he or she possesses material that appears to be privileged." (*State Fund, supra,* 70 Cal.App.4th at p. 656, italics added.) Under *Costco,* once the examination showed a document had been transmitted between an attorney representing VeriSign and either an officer or employee of VeriSign, that examination would suffice to ascertain the materials are privileged, and any further examination would exceed permissible limits. (*Costco, supra,* 47 Cal.4th at p. 733.) There is evidence to support the finding that Higgs's review exceeded those limitations: Higgs's initial review also examined the content of each document in sufficient detail to allow Higgs to "determine their subject matter for categorization," and Higgs's subsequent review (occurring after VeriSign warned that Higgs possessed privileged documents) was focused on "whether the dominant purpose of the e-mail was business or legal advice," which necessarily involved an assessment of its contents.[8] There was also some evidence from which a trial court could have concluded Higgs affirmatively used some of the substantive information contained in the privileged documents to question witnesses or to support Clark's claims, and Clark concedes

---

*Clark's attorneys* filed in opposition to the disqualification motion, and (3) in the *exhibits filed by Clark* in opposition to the disqualification motion. Clark makes no reference to any of VeriSign's evidence, or any effort to present that evidence most favorable to the trial court's findings.

[8] Indeed, in Higgs's April 27, 2010, letter concerning the disputed documents, it stated (1) "many of the documents were irrelevant to this lawsuit" and would be gladly returned by Clark, and (2) one of the documents authored by Goshorn "is not a confidential document as Mr. Goshorn is giving business and not legal advice." We are uncertain how such a content-specific characterization of those documents could have been proffered by Higgs *without* an in-depth examination of the content of those documents.

Higgs employed the Bond memo to craft a claim against VeriSign, which necessarily required an excessive review of the content of that memo beyond what would be permissible to determine the memo was privileged under *Costco*. We conclude substantial evidence supports the finding Higgs violated its obligations as outlined in *State Fund* and *Rico*.

### C. The Selected Remedy Was Not an Abuse of Discretion

The *Rico* court also addressed the question of remedy when the attorney, having obtained privileged documents, violated the obligations imposed under *State Fund*. Although *Rico* echoed *State Fund*'s caution that " ' "[m]ere exposure" ' to an adversary's confidences is insufficient, standing alone, to warrant an attorney's disqualification" (*Rico, supra*, 42 Cal.4th at p. 819, quoting *State Fund, supra*, 70 Cal.App.4th at p. 657), *Rico* also stated that " 'in an appropriate case, disqualification might be justified if an attorney inadvertently receives confidential materials and fails to conduct himself or herself in the manner specified above, assuming other factors compel disqualification.' " (*Rico*, at p. 819.)

Clark asserts the trial court erred when it concluded the appropriate remedy for the violations was to disqualify Higgs. However, Clark does not suggest the court *misunderstood* the applicable legal principles guiding its discretionary decision.[9] Instead, Clark disagrees with *how* the court exercised its discretion, specifically arguing there was no showing of any "risk of prejudice" from Higgs's review and use of the privileged documents.

When exercising its discretion, a trial court must "make a reasoned judgment that complies with applicable legal principles and policies" (*Strasbourger, supra*, 69 Cal.App.4th at p. 1403), and we will reverse "only when there is no reasonable basis for the trial court's decision" (*Federal Home, supra*, 68 Cal.App.4th at p. 860). "In deciding whether the trial court abused its discretion, '[w]e are . . . bound . . . by the substantial evidence rule.' " (*Strasbourger*, at p. 1403.)

The trial court's order, expressly "designed to be prophylactic, not punitive," found disqualification was necessary "not only to protect the rights of VeriSign but also to preserve the integrity of the judicial proceedings," and

---

[9] The record shows the trial court clearly understood the guiding principles. In its ruling, the trial court expressly stated that it "recognize[d] that 'disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.' [(Quoting *SpeeDee, supra*, 20 Cal.4th at p. 1145.)]"

further found there was a "genuine likelihood" that Higgs's review of the privileged materials could affect the outcome of the proceedings. The former finding, which reflects a sensitivity to *SpeeDee*'s admonition that the "paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar" (*SpeeDee, supra*, 20 Cal.4th at p. 1145), has substantial evidentiary support. On this record, a trier of fact could conclude Higgs's continued representation of Clark could trigger doubts over the integrity of the judicial process because whenever Higgs's advocacy against VeriSign began to touch on matters contained in the privileged documents that Higgs retained (for over nine months) and excessively reviewed, the inevitable questions about the sources of Higgs's knowledge (even if Higgs in fact obtained such knowledge from legitimate sources) could undermine the public trust and confidence in the integrity of the adjudicatory process.[10]

■ The latter finding—that there was a "genuine likelihood" Higgs's review of the privileged materials could affect the outcome of the proceedings—also has some evidentiary support. Certainly, Higgs's review and use of the Bond memo had a direct and immediate impact on the legal posture of Clark's case. Moreover, even if the Bond memo were later determined to be discoverable, there were other documents (also found to be privileged by the trial court) the trial court could have found had been used by Clark to develop or support his case against VeriSign.[11] Finally, and contrary to Higgs's apparent contention that disqualification is improper absent an affirmative showing of existing injury from the misuse of privileged documents, disqualification is proper as a prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed. (See *Chronometrics, Inc. v. Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 607–608 [168 Cal.Rptr. 196]; accord, *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 308–309 [254 Cal.Rptr. 853].) On this record, we do not find the trial court so exceeded the bounds of reason that its decision to disqualify Higgs, rather than to select some other remedy, was an abuse of discretion.

---

[10] For example, VeriSign submitted a transcript from Roper's deposition taken in September 2010 by an attorney with Higgs. That attorney asked Roper questions VeriSign argued were "derive[d] from a privileged legal opinion from an outside law firm that VeriSign obtained in September 2007," which Clark had taken and turned over to Higgs. Although Higgs's opposition below claimed the questions did *not* derive from that document, this is but one example of the type of concerns that could have reasonably led the trial court to conclude that disqualification for prophylactic purposes was appropriate.

[11] First, as discussed above, the questions posed to Roper may have derived from a privileged legal opinion from an outside law firm. Second, when Clark was questioned in his deposition about various aspects of his claims against VeriSign, he indicated he could not verify that he would not offer certain of the privileged documents into evidence to support his claims.

## DISPOSITION

The petition is denied. The stay issued by this court on November 23, 2010, will be vacated 10 days after the opinion is final as to this court. Real parties in interest shall recover costs in the writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

Benke, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied June 22, 2011, and petitioner's petition for review by the Supreme Court was denied August 17, 2011, S194729.