THOMPSON, J.,
Dissenting.—I respectfully dissent. The court’s decision today is an unwarranted extension of the ethical rule declared in State Comp. Ins. Fund v. WPS, Inc. (1999) 70 Cal.App.4th 644 [82 Cal.Rptr.2d 799] {State Fund). The State Fund rule does not apply to the unusual situation in this case, but even if it does apply, Gibson Dunn & Crutcher LLP (Gibson Dunn) did not violate it. And, in any event, disqualification was not proper because Gibson Dunn’s conduct was not clearly proscribed by the State Fund rule.
1. The State Lund Rule Does Not Apply.
The State Fund rule does not apply because the unusual situation in this case bears no material resemblance to the situation in that case. In State Fund, the plaintiff’s lawyer erroneously sent the privileged documents directly to the defendant’s lawyers, together with copies of other documents previously produced during discovery, all in preparation for trial. (State Fund, supra, 70 Cal.App.4th at p. 648.)
The erroneous disclosure was patently inadvertent and undisputed. (State Fund, supra, 70 Cal.App.4th at p. 648.) When the defendant’s lawyer refused to return the privileged documents, the plaintiff’s lawyer promptly sought an order compelling destruction or return of the privileged documents and sanctions. {Id. at p. 649.)
In this case, a client, Richard P. Hausman, Sr. (Dick), forwarded the Blaskey e-mail (see maj. opn., ante, at p. 1094) to a nonlawyer, Ninetta Herbert, who forwarded it to Gavin Herbert, another nonlawyer. Gavin then gave hard copies to Richard P. Hausman, Jr. (Rick), William J. Cox and Greg Pellizzon, all nonlawyers. Gavin also forwarded it to Jonathan C. Lurie, who was a lawyer for M. Hausman, Inc. (MHI), at that time but is now a client. Lurie put it in the McDermott Will & Emery LLP (MWE)/MHI client file, where it was later found by his lawyers, Gibson Dunn.
*1127 The only disclosure in this entire series of disclosures which was even arguably inadvertent was the initial disclosure by Dick to Ninetta. That disclosure was not patently inadvertent, and the claimed inadvertence was subject to reasonable dispute. Lurthermore, none of these disclosures occurred in the context of formal discovery or preparation for trial. Instead, they all occurred in the context of an attempt to resolve the MHI dispute without litigation, with Gavin acting as an informal mediator.
After these disclosures came to light, Dick’s lawyers did very little to secure the destruction or return of all copies of the Blaskey e-mail. In August 2014, Jason Kirby told Dick’s lawyers in the October 2013 probate action (Probate Action) that Gavin had given copies to Rick, Cox and Pellizzon. Kirby also told Dick’s lawyers, ‘7 would suspect the disclosure continued beyond my clients and Mr. Pellizzon.'’' (Italics added.)
Dick’s lawyers claimed Dick had inadvertently disclosed the Blaskey e-mail to Ninetta, and asked Kirby to have Rick and Cox destroy their copies of it. They also asked Kirby to have Rick and Cox contact any third parties who possessed copies and ask them to destroy their copies too, but Kirby refused.
Kirby questioned the inadvertence claim and insisted discovery would be necessary to resolve the privilege claim. He explained: “[Tjhis is going to be a fact intensive issue about waiver . . . and the extent of its further distribution by persons other than Dick . . . is currently unknown . . . . [¶] . . . [¶] . . . Until such time as we can garner all the facts, we will proceed with deleting and destroying all copies in our possession, but we will retain a single copy in a sealed envelope for use at your client’s continuing deposition and ... for use at further depositions . . . . [¶] Likewise, we will make sure to request the return of the same from our clients, but our ethical obligation extends no further than deeding with our own clients." (Italics added.)
Even so, Dick’s lawyers never did anything else to secure the return of the Blaskey e-mail from Rick, Cox or Kirby. More to the point, they never did anything else to determine the extent of further disclosure either to or by other third parties like Lurie.
Gibson Dunn first became aware of the Blaskey e-mail in June 2015, when they found it in the MWE/MHI client file while preparing MWE’s response to a subpoena from Dick’s lawyers in the Probate Action. Gibson Dunn produced a copy of the Blaskey e-mail to Dick’s lawyers in the Probate Action about a month later. Dick’s lawyers did absolutely nothing in response. They neither demanded that it be returned nor sought a protective order.
*1128 These distinctions are material for three reasons. Lirst, the State Fund rule “is fundamentally based on the importance which the attorney-client privilege holds in the jurisprudence of this state.” (State Fund, supra, 70 Cal.App.4th at p. 657.) The State Fund rule essentially obligates the receiving lawyer to protect the attorney-client privilege for the privilege holder, when the privilege holder’s own lawyer is unable to do so because he or she is unaware of the inadvertent disclosure. {Id. at pp. 656-657.)
In this case, the privilege holder’s own lawyers were aware of the arguably inadvertent disclosure long before the receiving lawyers. Dick’s lawyers learned of the arguably inadvertent disclosure in August 2014, almost a year before Gibson Dunn learned of it in June 2015. So Dick’s own lawyers were able to protect the attorney-client privilege for Dick but they simply failed to do so. In these circumstances, Gibson Dunn had no obligation to protect the attorney-client privilege for Dick.
Second, the State Fund rule is based on the belief “a client should not enter the attorney-client relationship fearful that an inadvertent error by its counsel could result in the waiver of privileged information . . . . ” (State Fund, supra, 70 Cal.App.4th at p. 657.) “Without it, full disclosure by clients to their counsel would not occur, with the result that the ends of justice would not be properly served.” {Ibid.)
But none of these policy concerns are implicated here because the arguably inadvertent disclosure was made by the client, Dick, not his lawyer. Client error poses no risk of disincentive to full candor by a client with his or her lawyer out of fear that an inadvertent error by the lawyer could result in the waiver of privileged information.
Third, the State Fund rule preserves the rights of attorneys to prepare for trial and “addresses the practical problem of inadvertent disclosure in the context of today’s reality that document production may involve massive numbers of documents.” (Rico v. Mitsubishi Motors Corp. (2007) 42 Cal.4th 807, 818 [68 Cal.Rptr.3d 758, 171 P.3d 1092] (Rico).) None of these policy concerns are implicated in this case either because the arguably inadvertent disclosure occurred outside the context of trial preparation and document production.
The only case cited by the majority which bears any resemblance to the unusual situation in this case is Clark v. Superior Court (2011) 196 Cal.App.4th 37 [125 Cal.Rptr.3d 361] (Clark). And Clark is only similar in one respect. There, as here, the attorney received the privileged documents from his own client, not from the opposing attorney. The Clark court merely assumed the State Fund rule applied and analyzed whether it was violated.
*1129 Regardless, Clark is easily distinguished. In Clark the client had taken the privileged documents from his employer in violation of a nondisclosure agreement. So the client’s acquisition and possession of the privileged documents was itself wrongful. The same cannot be said here. There was nothing wrongful about Lurie’s acquisition or possession of the Blaskey e-mail.
Great American Assurance Co. v. Liberty Surplus Ins. Corp. (N.D.Cal. 2009) 669 L.Supp.2d 1084 (Great American) illustrates why the State Fund rule does not apply under these circumstances. There, the defendant insurer’s claims specialist forwarded a privileged coverage counsel opinion to the outside insurance broker for a business claiming coverage. (Id. at p. 1088.) The broker then sent the opinion to the plaintiff, the business’s primary insurer. The defendant claimed it did not become aware of the inadvertent disclosure until a month later, at which point it sought to recover the opinion, but the plaintiff refused. (Ibid.) Coverage litigation ensued and the plaintiff produced, from its claims file, a copy of the opinion. (Id. at p. 1089.) The plaintiff also attached a copy of the opinion to its motion for summary judgment. (Ibid.)
The Great American court concluded the State Fund rule did not apply because the plaintiff “did not receive any communication directly from [the defendant],” making this situation “much different from a case wherein some privileged or work-product protected documents, part of a larger set of documents, were inadvertently sent with the larger set, thus indicating that it might be a mistake.” (Great American, supra, 669 L.Supp.2d at p. 1093.) Instead there, as here, “a single document was sent, and it was not sent directly to opposing counsel.” (Ibid.)
The Great American court explained, “it was not reasonably apparent that the coverage opinion was inadvertently sent. In fact, it may have been reasonably apparent that any privilege or protection was waived.” (Great American, supra, 669 L.Supp.2d at p. 1093.) The court emphasized the defendant did not raise the issue of inadvertent disclosure for well over a month after it came to light. (Ibid.) Thus, the defendant’s counsel “would have had little reason to think that the original email was not voluntarily sent.” (Ibid.) All of the same is true here and the same result should obtain.
This result also makes sense. The State Fund rule prevents “ ‘a “gotcha” theory of waiver, in which an underling’s slip-up in a document production becomes the equivalent of actual consent [to waive the privilege].’ ” (State Fund, supra, 70 Cal.App.4th at p. 654.) But extending the State Fund rule to the unusual situation here results in a reverse gotcha which could “ ‘nullify a party’s right to representation by chosen counsel any time inadvertence or *1130 devious design put an adversary’s confidences in any attorney’s mailbox.’ ” (Id. at p. 657.) “ ‘Protecting the integrity of judicial proceedings does not require so draconian a rule.’ ” (Ibid.)
Lor all of these reasons the State Fund rule does not apply in this case as a matter of law. (Ghirardo v. Antonioli (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960] [when the decisive facts are undisputed we are confronted with a queshon of law].) Gibson Dunn’s discovery of the Blaskey e-mail in the MWE/MHI client file is plainly too far removed from Dick’s arguably inadvertent disclosure to Ninetta. The majority is not just trying to put a square peg in a round hole. They are trying to put a square peg in no hole at all.
2. Gibson Dunn Did Not Violate the State Lund Rule.
Gibson Dunn did not violate the State Fund rule for two reasons. Lirst, Gibson Dunn’s State Fund obligahons were never triggered because it was not reasonably apparent that the Blaskey e-mail was provided or made available through inadvertence. Second, even if Gibson Dunn’s State Fund obligations were triggered they were discharged when Gibson Dunn produced the Blaskey e-mail to Dick’s lawyers.
As a preliminary procedural matter, I note the trial court never expressly determined that Gibson Dunn’s State Fund obligahons were triggered, or that Gibson Dunn violated those obligations through its use of the Blaskey e-mail. In fact, the trial court never made any express findings at all regarding Gibson Dunn’s asserted State Fund obligations or violations.
The majority would rely upon the doctrine of implied findings and the presumption of correctness to overcome these procedural defects. This they cannot do. “[W]here, as here, a respondent argues for affirmance based on substantial evidence, the record must show the court actually performed the factfinding function. Where the record demonstrates the trial judge did not weigh the evidence, the presumption of correctness is overcome. [Citation.] As stated in Estate of Larson (1980) 106 Cal.App.3d 560, 567 [166 Cal.Rptr. 868], ‘The [substantial evidence] rule thus operates only where it can be presumed that the court has performed its function of weighing the evidence. If analysis of the record suggests the contrary, the rule should not be invoked.’ ” (Kemp Bros. Construction, Inc. v. Titan Electric Corp. (2007) 146 Cal.App.4th 1474, 1477-1478 [53 Cal.Rptr.3d 673].)
Such is the case before us. The record demonstrates the trial court never weighed the evidence and performed the factfinding function regarding Gibson Dunn’s asserted State Fund obligations. Instead, it improvidently *1131 collapsed the three-part State Fund inquiry into two parts: (1) the predicate inquiry as to whether the Blaskey e-mail was privileged; and (2) the subsequent inquiry as to whether disqualification was necessary. These procedural defects alone warrant issuing the requested writ relief.
Turning to the merits, Gibson Dunn’s State Fund obligations were not triggered when they found the Blaskey e-mail in the MWE/MHI client file because it was not “reasonably apparent that the materials were provided or made available through inadvertence . . . .” (State Fund, supra, 70 Cal.App.4th at p. 656.) This part of the State Fund rule states an objective standard, and in applying it “courts must consider ... the circumstances of the litigation (Rico, supra, 42 Cal.4th at p. 818.)
The burden of proof rested squarely on Dick’s lawyers—not Gibson Dunn. State Fund requires, “whenever a lawyer seeks to hold another lawyer accountable for misuse of inadvertently received confidential materials, the burden must rest on the complaining lawyer to persuasively demonstrate inadvertence." (State Fund, supra, 70 Cal.App.4th at p. 657, italics added; accord, Rico, supra, 42 Cal.4th at p. 817.)
In this case, the relevant objective circumstances of the litigation are:
—Gibson Dunn received the Blaskey e-mail from its own client, Lurie, who innocently received it from a third party, Gavin, not from the privilege holder, Dick, or from Dick’s lawyers. Again this unusual situation is nothing like State Fund or Clark.
—The Blaskey e-mail stated it was a “Summary of [the] 8/22/13 meeting,” a meeting attended by Dick, Rick, Cox, Blaskey and Lurie. That Lurie had a copy of the Blaskey e-mail was unremarkable since he had attended the meeting as MHI’s lawyer.
—The Blaskey e-mail, unlike the State Fund and Clark, documents, was not labeled with privilege or confidentiality warnings. (State Fund, supra, 70 Cal.App.4th at p. 648 [“ ‘Attorney-Client Communication/Attorney Work Product ... Do Not Circulate or Duplicate . . . Confidential’ ” (capitalization omitted)]; Clark, supra, 196 Cal.App.4th at p. 43 [“ ‘Attorney-Client Privileged’ . . . ‘Highly Confidential’ ”].) Thus, the Blaskey e-mail did not “make clear to even a casual observer that [it was] intended to be [a] confidential attorney-client communication[].” (State Fund, supra, 70 Cal.App.4th at p. 653.)
—The Blaskey e-mail was addressed to Dick and to Jill Lindsay. Lindsay was “MHI’s longtime bookkeeper” according to the allegations of the *1132 complaints in the Malpractice Actions served on May 4, 2015, over a month before Gibson Dunn found the Blaskey e-mail in the MWE/MHI client file. Gibson Dunn first learned Lindsay also claimed to be Dick’s “personal assistant” on August 19, 2015, about three months after Gibson Dunn found the Blaskey e-mail. Up until then Gibson Dunn had no reason to even suspect it might have been “reasonably necessary” (Evid. Code, § 952) to address the Blaskey e-mail to Dick and to Lindsay.
—Unlike in Rico, no Gibson Dunn attorney ever “admitted that after a minute or two of review he realized . . . [opposing counsel] did not intend to reveal them.” (Rico, supra, 42 Cal.4th at p. 819.) This fact is relevant, although “such admissions are not required for the application of the objective standard . . . .” (Ibid.)
—Dick forwarded the Blaskey e-mail to “Mr. & Mrs. Gavin Shearer Herbert,” at Ninetta’s e-mail address, at a time when everyone involved knew Gavin, Dick’s brother-in-law, was trying to mediate the MHI dispute. These circumstances suggested Dick had deliberately forwarded it to Ninetta, who is Gavin’s wife.
—At the time that Gibson Dunn found the Blaskey e-mail in the MWE/MHI client file, it had been nearly two years since Lurie had received it from Gavin; it had been almost one year since Dick’s lawyer’s had been told it had been distributed to third parties other than Rick, Cox, Kirby and Pellizzon; and neither Dick nor his lawyers had ever raised any concerns about it with either Lurie or Gibson Dunn.
On this record, there is no reasonable basis to conclude Dick’s lawyers met their burden to persuasively demonstrate inadvertence based upon the relevant objective litigation circumstances. Hence, even if the trial court had made a factual finding on the inadvertence issue, that finding would not have been supported by substantial evidence.
The majority’s arguments for the opposite conclusion are legally unsound. The majority improperly equates the presumption of privilege (Evid. Code, §917, subd. (a)), with a presumption of inadvertence. By doing so, the majority, like the trial court, collapses the three-part State Fund inquiry into two parts, and effectively reads the reasonably apparent inadvertence requirement out of the rule. There is no presumption of inadvertence, and even if there were a presumption of inadvertence it was rebutted here.
Next the majority relies on evidence of events which occurred after Gibson Dunn found it had received the Blaskey e-mail. This evidence is irrelevant. Gibson Dunn’s State Fund obligations were triggered, if at all, at the time *1133 Gibson Dunn found it had received the privileged document. (State Fund, supra, 70 Cal.App.4th at p. 656.)
The majority also argues “counsel’s warning on privilege holder’s behalf triggers an opposing attorney’s State Fund duties.” (Maj. opn., ante, at p. 1115, italics added; citing Clark, supra, 196 Cal.App.4th at pp. 52-53.) The majority’s reliance on Clark is misplaced. Clark was addressing the question of whether the attorney had excessively reviewed the privileged documents in violation of the obligations imposed by State Fund, not the question of whether those obligations had been triggered in the first instance.
Besides, Gibson Dunn discharged their State Fund obligations, if any, when they produced the Blaskey e-mail. State Fund declares the receiving attorney “should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged.” (State Fund, supra, 70 Cal.App.4th at p. 656.)
Gibson Dunn notified Dick’s lawyers they possessed the Blaskey e-mail when they produced it in response to Dick’s subpoena, and again when Rick’s lawyers questioned Lurie about it during his deposition. And there is no evidence Gibson Dunn examined it any more than necessary prior to notifying Dick’s lawyers they had it.
At that point, Gibson Dunn’s State Fund obligations, if any, were discharged, and the burden shifted to Dick’s lawyers. Since the parties could not resolve the situation by agreement, Dick’s lawyers were obligated to promptly seek guidance from the court, “with the benefit of protective orders and other judicial intervention as may be justified.” (State Fund, supra, 70 Cal.App.4th at p. 657.) This is exactly what the plaintiff’s lawyers did in State Fund and what Dick’s lawyers failed to do here.
The contrary conclusion by the majority upsets the delicate balance of competing interests struck in State Fund. (See State Fund, supra, 70 Cal.App.4th at p. 657.) It imposes on Gibson Dunn an obligation to respect their opponent’s interests which is greater than and in direct conflict with their primary obligation to zealously represent their own client’s interests. It penalizes Gibson Dunn for Dick’s lawyer’s failure to represent Dick’s interests. This cannot be what the State Fund rule requires.
3. Disqualification Was Not Proper.
Disqualification was not proper because Gibson Dunn’s conduct was not clearly proscribed by the State Fund rule. On this point, State Fund is analogous.
*1134 In State Fund, the trial court awarded sanctions against the defendant’s lawyer for refusing to return and for using the privileged documents in violation of an American Bar Association (ABA) ethics opinion. (State Fund, supra, 70 Cal.App.4th at p. 651.) The Court of Appeal reversed and explained the lawyer should not have been sanctioned for engaging in conduct “which has not been condemned by any decision, statute or Rule of Professional Conduct applicable in this state. The finding that an attorney has engaged in conduct contrary to an ABA formal opinion does not establish an obligatory standard of conduct imposed on California lawyers. Consequently it may not perforce be equated to a failure to act in good faith such that sanctions are warranted.” (Id. at p. 656.)
Similarly, the trial court here granted Dick’s motion to disqualify Gibson Dunn for refusing to return the Blaskey e-mail and for allegedly using it in violation of their obligations under State Fund. But until today, no court has ever applied the State Fund rule in any case which bears any material resemblance to this case. So here, as in State Fund, the disputed conduct has never before been condemned by any decision, statute or Rule of Professional Conduct applicable in this state. Consequently, it may not be equated to a failure to act in good faith such that disqualification is warranted.
In the final analysis this was an unusual privilege dispute. Gibson Dunn’s conduct was objectively reasonable. That this court has now greatly expanded the State Fund rule to condemn Gibson Dunn’s conduct is not a proper basis for disqualification.
Petitioners’ petition for review by the Supreme Court was denied June 14, 2017, S242029.