Filed 4/4/25 (prior 4/1/25 modification order vacated; unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| CHRISTIAN L. JOHNSON, | C099319 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UCR-2019-281) |
| v. | |
| DEPARTMENT OF TRANSPORTATION, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

To correct a clerical error, the court vacates the April 1, 2025, order modifying the opinion and denying rehearing.

It is ordered that the published opinion filed herein on March 17, 2025, be modified as follows:

On page 8, in the first sentence of the first paragraph, the words "On January 10, 2023," and "which stayed the case" are deleted, and the words "and on January 10, 2023, this court stayed the case" are added. As modified, this sentence now reads:

> Johnson filed a petition for writ of mandate in this court, and on January 10, 2023, this court stayed the case.

This modification does not change the judgment. Appellant's petition for rehearing is denied.

BY THE COURT:


 /s/
HULL, Acting P. J.


 /s/
FEINBERG, J.


 /s/
WISEMAN, J.[*]

---

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 3/17/25 (unmodified version)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| CHRISTIAN L. JOHNSON, | C099319 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UCR-2019-281) |
| v. | |
| DEPARTMENT OF TRANSPORTATION, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Joaquin County, Barbara A. Kronlund, Judge. Affirmed.

Law Offices of John A. Shepardson and John A. Shepardson for Plaintiff and Appellant.

Erin E. Holbrook, Alan M. Steinberg, Gina L. Cardoza, W. Christopher Sims and Danielle Sullivan for Defendant and Respondent.

1

Plaintiff Christian L. Johnson sued his employer, defendant California Department of Transportation (Caltrans), based on claims arising out of his employment. While the suit was pending, Paul Brown, an attorney for Caltrans, sent an email about the litigation (the Brown email) to Nicolas Duncan, Johnson's supervisor. Duncan sent an image of the email to Johnson, who shared it with his attorney, John Shepardson. Johnson and Shepardson then shared the email with several retained experts and other individuals.

After extensive meet-and-confer communications, Caltrans sought a protective order on the ground that the email was covered by the attorney-client privilege. The trial court entered the order.

In the months that followed, the parties engaged in a protracted dispute concerning Johnson's and Shepardson's compliance with the protective order's terms. Eventually, Caltrans filed a motion to enforce the order and later a motion to disqualify Shepardson and three retained experts. The trial court disqualified Shepardson and the experts.

On appeal, Johnson challenges the trial court's disqualification order. Among other arguments, he claims that the Brown email was not protected by the attorney-client privilege, Caltrans waived any privilege through undue delay, and the court abused its discretion in ordering the drastic remedy of disqualification. We find no merit in his arguments and will affirm the order.

BACKGROUND

I.

Johnson's first amended complaint, filed in March 2019, alleged fifteen claims against Caltrans, including for discrimination, harassment, and retaliation. On January 10, 2022, while the suit was pending, Paul Brown, an attorney for Caltrans, sent an email to Nicolas Duncan, who was Johnson's supervisor at the time and not a named party in the litigation. The email contained a "CONFIDENTIALITY NOTICE" that stated: "This is a privileged attorney-client communication and/or is covered by the attorney work-product doctrine. It is for the sole use of the intended recipient(s). Any

2

unauthorized review, use, disclosure, or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.  Do not print, copy or forward."

Unbeknownst to Caltrans, Duncan took a photograph of the email and sent it to Johnson, who gave it to his attorney, John Shepardson.  It is unclear why Duncan did this, and the unredacted email itself is not a part of the record.  At this point in the case, trial was set for April 18, 2022.

The next day, Shepardson emailed Caltrans's counsel, Christopher Sims, attaching the image and saying it "was sent to my client."  Shepardson asserted that the email was intentionally disclosed and so "appears to be a waiver of attorney-client privilege, if any privilege attaches to communications with Mr. Duncan."  Shepardson also stated that the email was "distressing" to Johnson and asked Caltrans to "cease and desist any and all communications with employees that are misleading about the merits of [Johnson's] claims."

Approximately four hours later, Sims responded to Shepardson's email.  Sims said that the Brown email was an attorney-client privileged communication as evidenced by the confidentiality language at the bottom of the email.  Sims further stated:  "Pursuant to the language contained in the email, as well as to [the] code of ethics, we request that you and your client delete or destroy the email.  Further, Mr. Duncan does not have the authority to waive attorney-client privilege on behalf of [Caltrans]."  Later that day, Shepardson responded by email requesting legal authority supporting Caltrans's assertion that the privilege applied to communications with Duncan.

The next day, Shepardson sent a letter to Sims entitled "Johnson v. California Department of Transportation (Good Faith Meet and Confer Re Attorney Paul Brown's False & Misleading Email to Mr. Duncan, Christian Johnson's Boss.)"  The letter asserted that the Brown email was not protected by the attorney-client privilege; and if it was protected, the privilege was waived because the email was disclosed and was subject to

3

the crime-fraud exception. The letter demanded that Brown cease and desist from making any further "false and misleading" statements to Duncan. It also demanded that Brown "send a clarifying statement" to Duncan to provide a balanced "and accurate depiction" of Johnson's history at Caltrans.

Approximately two weeks later, on January 28, 2022, Shepardson sent another letter to Sims. The letter reiterated Johnson's demand that Caltrans stop providing "false and/or misleading information to any witnesses" and said that the Brown email was "emotionally damaging" to Johnson. The letter additionally stated that Shepardson would be providing the email to the retained experts "for its impact on their opinions." The email would also be offered into evidence at trial. The letter closed by saying: "Unless otherwise promptly informed, I will assume there is no objection to the processes outlined above."

That same day, Johnson met with Bennett Williamson, Ph.D., who had been retained by Shepardson to provide expert testimony on Johnson's claim that he suffered psychological harm as a result of Caltrans's alleged wrongdoing. Johnson showed Williamson the Brown email, and Williamson read it.

On February 3, 2022, Sims sent a letter to Shepardson. Citing *Upjohn Co. v. United States* (1981) 449 U.S. 383, *Commodity Futures Trading Com. v. Weintraub* (1985) 471 U.S. 343, and California State Bar Rules of Professional Conduct, rule 4.4, Sims maintained that the Brown email was covered by the attorney-client privilege and requested that Shepardson "immediately destroy the email[] and any copies." The letter further said: "Caltrans will resist any attempt made by you to include the email in this action or to offer it as evidence at trial. The email is an attorney-client privileged communication that you should not be in possession of and it is only in your possession because it was provided to you by an individual who lacked the authority or right to do so. [¶] As for your assertion that you plan to share the email with your experts, again we demand you refrain from doing so. The email is a non-discoverable communication that

4

is protected both by attorney-client privilege and the work product doctrine." Sims advised Shepardson that if he did "not immediately cease dissemination and destroy all copies of Mr. Brown's email to Mr. Duncan," Caltrans would seek a protective order from the court and "any and all other remedies provided by law."

Shepardson responded with a letter the same day. It stated that Johnson had "disclosed the email to Dr. Williamson so that his psychological evaluation was based on the truth." Shepardson said that if Johnson had not "disclose[d] the contents of the email and yet ha[d] this new round of emotional distress, his objective scoring may show he's lying and/or the interview with Dr. Williamson harmed by lack of a clear statement of his condition and the causes of it." The letter also set forth Shepardson's additional legal arguments for why the email was not privileged, including his view that the "dominant purpose" of the email was to "maliciously damage [Johnson's] career and generate a hostile witness against him," that Duncan was not the one whose actions had " 'embroiled' Caltrans 'in serious legal difficulties,' " and that the email made false claims and was therefore "fraudulent."

In early February 2022, the parties exchanged a series of written correspondence. Among other things, the parties disagreed about whether the assistance of the appointed discovery referee was required, and Shepardson asked the trial court to set an ex parte hearing about the email. The trial court declined Shepardson's request, stating that the matter should be addressed by the referee.

In an email to Caltrans, Shepardson repeated his statement that Johnson had given the Brown email to Williamson. The email additionally stated that they had given the Brown email to Johnson's "HR experts."

On February 17, 2022, Sims sent a letter to Shepardson advising him that further meet-and-confer efforts would be futile because of what Caltrans saw as Shepardson's "repeated misrepresentations regarding our position on the attorney-client privilege with

5

Caltrans employees and baseless claim of criminal activity." Sims further noted that Caltrans would be filing a motion concerning the email "in the near future."

The same day, the trial court stayed the action pending resolution of an unrelated motion to disqualify Shepardson based on his representation of Johnson's mother. The court lifted the stay on April 1, 2022. The court also vacated the April 18, 2022 trial date; in June 2022, trial was reset for May 8, 2023. On June 21, 2022, Sims served a notice stating that he would be unavailable from July 1, 2022 to August 31, 2022.

II.

On August 18, 2022, Caltrans filed a motion for protective order. The motion asked for an order prohibiting further disclosure or use of the Brown email and its contents, compelling the return or destruction of any existing copies of the email, and requiring Johnson to identify everyone to whom the email had been disclosed. The motion was supported by a declaration from Brown stating that he had sent the email within the scope of his representation of Caltrans for the purpose of preparing "Caltrans's defense as part of the investigation into the claims by [Johnson]."

In opposition to the motion, Johnson filed, among other things, a declaration by Williamson. Williamson stated that "[i]t would be difficult, and perhaps impossible, to give testimony about [Johnson's] psychological harm . . . without consideration of the damaging email."

The trial court referred the motion to the appointed discovery referee, and the referee issued a recommended ruling. On January 3, 2023, the trial court overruled objections to the recommendation and adopted the referee's ruling. The ruling concluded that Caltrans had made a showing that the Brown email was covered by the attorney-client privilege. Citing *Upjohn Co. v. United States*, *supra*, 449 U.S. 383, 391, the court determined that the email to Duncan was privileged because its dominant purpose was to obtain relevant information from Duncan and prepare Caltrans's defense in the case. The email was confidential, as indicated by the confidentiality warning at the end. And

6

Caltrans had not waived the privilege through disclosure, delay in bringing the motion, or by other means.

In discussing whether Caltrans had unduly delayed in filing the motion, the trial court cited *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 656-657 (*State Fund*) and *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1108-1109 (*McDermott*), two cases involving a lawyer's ethical duties upon receiving documents that are or may be privileged. The court said that Caltrans could have reasonably expected Shepardson to comply with his duties under *State Fund*. The court acknowledged "it may be too much to say that Mr. Shepardson should have concluded that the Brown e-mail was 'obviously' privileged," as understood in *State Fund*. Shepardson realized he had received material that "*may* be privileged" and "responded to his recognition of the issue by immediately informing Mr. Sims of the disclosure, as required by *McDermott*. At that point the burden shifted to defense counsel to 'take appropriate steps to protect the materials.' " Caltrans sought to protect the email by asserting the privilege to Shepardson. In subsequent communications, Shepardson did not say he would proceed to distribute the email; and absent any such warning, Caltrans did not unreasonably delay.

The trial court's order concluded that the Brown email was protected as an attorney-client communication and could not be introduced into evidence at trial. It prohibited Johnson and Shepardson "from any further dissemination of the Brown e-mail." It ordered Johnson and Shepardson to destroy or return "all copies of the Brown e-mail" and file a compliance declaration stating they had done so and identifying "all persons to whom the Brown e-mail is known to have been disclosed, and the date of each disclosure." The order stated that it was not addressing whether Johnson or his retained experts could testify about the email or its effects on Johnson. It also awarded Caltrans $4,400 in attorneys' fees.

7

On January 10, 2023, Johnson filed a petition for writ of mandate in this court, which stayed the case. On February 6, 2023, we dismissed the petition and vacated the stay.

III.

On March 28, 2023, Caltrans sent a letter to Shepardson asserting that he had not complied with the protective order. Caltrans advised that Shepardson had failed to file declarations showing compliance with the trial court's order as required and had not paid the attorneys' fees awarded. The letter requested compliance by April 4, 2023 and stated that Caltrans would file a motion to enforce if Shepardson failed to comply by that date.

On April 3, 2023, Johnson filed in this court another petition for writ of mandate with a request for a stay. This court denied the petition.

On April 17, 2023, Caltrans filed a motion to enforce the protective order. Shortly thereafter, on April 24, 2023, Johnson and Shepardson served and filed declarations stating they had complied with the protective order and paid the $4,400 due. Shepardson's declaration stated that he had discussed the Brown email with several individuals, including Williamson, on an ongoing basis as of the date of the declaration. The declarations did not state whether the email itself had been provided to those individuals or whether Johnson and Shepardson had retrieved the email. Shepardson later supplemented his declaration to clarify that he had removed and destroyed his own copies of the email as of April 24, 2023.

At a hearing on June 6, 2023, the trial court denied Caltrans's motion to enforce as moot but awarded Caltrans $2,640 in attorneys' fees incurred in preparing and arguing the motion. The order was without prejudice to a new motion concerning violations of the protective order. The court, however, advised the parties that they should meet and confer first.

During the month of June 2023, the parties met and conferred concerning Shepardson's and Johnson's compliance with the protective order. On June 13, Sims sent

8

Shepardson a letter stating that, based on the statements made in his compliance declarations, it appeared that Shepardson was continuing to use and disseminate the Brown email even after the issuance of the protective order. Shepardson's declarations also failed to provide assurance that the individuals to whom the email had been distributed had destroyed their copies. Johnson's declaration had similar deficits.

Two days later, Shepardson sent a responsive letter to Sims. Shepardson asserted that the protective order permitted "verbal communications about the Brown email and its contents" and argued that Johnson and others could testify about the email. According to Shepardson, because the protective order did not address whether the parties could testify about the email, it allowed Shepardson and Johnson to verbally discuss the email. Shepardson additionally argued that Caltrans had waived any objections to third parties possessing the email because it had delayed in seeking enforcement of the privilege, rendering the trial court's protective order "moot." He also maintained that Caltrans was required to file a motion under Code of Civil Procedure section 1008 to expand the protective order and that he and Johnson had complied with the protective order.

IV.

On June 28, 2023, Caltrans filed a motion to disqualify Shepardson and the experts. At the time of the motion, trial was set for August 28, 2023.

Johnson responded by arguing that the motion was essentially a renewed motion and therefore violated Code of Civil Procedure section 1008, which generally prohibits motions to reconsider absent satisfaction of certain preconditions. The trial court rejected this argument and set the motion for hearing.

In a declaration by Sims, Caltrans noted that Williamson had evaluated Johnson at least twice after the disclosure of the Brown email and that Williamson had relied on the email to form his opinion. Two other experts retained by Johnson, Jan Duffy and Virginia Simms, had also reviewed the Brown email, and Caltrans had not been able to depose any of the three experts because of concerns they would testify about the email as part of their

9

opinions. Caltrans had not had its own expert, Glenn Hammel, who had not received or reviewed a copy of the email, evaluate Johnson since March 2021 out of concern that Johnson would discuss the email; Caltrans likewise did not want to offer Hammel for deposition because of concerns that Shepardson would discuss the email. Moreover, Shepardson's compliance declaration indicated that the email had been given to three percipient witnesses who could be called at trial.

Shepardson filed a declaration noting the extensive history of the case, which had spanned five years and included 35 depositions, thousands of pages of documents exchanged, a mediation, a settlement conference, and the appointment and termination of two discovery referees. He explained that it would be difficult for Johnson to retain new experts at this point in the litigation. Shepardson also asserted that he had not discussed the contents of the email with anyone following the January 3, 2023 protective order. He intended to offer testimony about the Brown email at trial. Shepardson also clarified his prior compliance declarations, providing another list of individuals to whom he had given the email.

Johnson also filed declarations from his experts in opposition to Caltrans's motion. Williamson declared he could testify at trial with or without relying on the Brown email, given the email's declining importance as time passed. Duffy declared that she did not recall seeing the Brown email, although she was told she had received it, and did not need to rely on it to testify. Simms had received the email, could testify without relying on it, and said she would "look for direction from attorney Shepardson and the Court regarding [the] scope and degree of [her] trial testimony regarding the Brown email."

On August 24, 2023, the trial court issued a tentative order granting the motion to disqualify Shepardson and the experts. Shepardson did not timely request argument, and the court adopted the tentative ruling. In the order, the trial court observed that, based on Shepardson's April 24, 2023 compliance declaration, he disclosed or discussed the Brown email with several individuals even after the court's January 3, 2023 protective order.

10

The court found it "clear that these disclosures were made in spite of CALTRANS'
assertion that the Brown email was a privileged and confidential communication and
even after the Court found the Brown email to be a privileged and confidential
communication."  The trial court further concluded that Shepardson had a duty to refrain
from using or disclosing the email while the parties and the court resolved the dispute as
to the email's status.  But he failed to abide by that duty.  The court explained:
"Mr. Shepardson's testimony . . . establishes that Mr. Shepardson made the decision—
early on—to use the Brown email in this litigation in spite of CALTRANS' protests.  In
opposition, Mr. Shepardson argues that there were delays in CALTRANS' responses and
he suggests that he consistently reached out to address and resolve the issue, but
Mr. Shepardson's May 23, 2023 declaration and [accompanying exhibit] undermine his
argument.  Mr. Shepardson's testimony confirms that the decision to use the Brown email
was made on January 28, 2022; that is, approximately two weeks after the inadvertent
disclosure and after CALTRANS asserted that the communication was privileged and
confidential."

The trial court additionally determined that Shepardson's conduct would prejudice
the ongoing proceedings.  It rejected Williamson's statement that he could now testify
without the Brown email, noting it was contradicted by his earlier statement that it would
be "difficult, and perhaps impossible" to testify without it.  The Simms and Duffy
declarations also raised concerns.  They noted that Caltrans had not demanded the return
or destruction of the Brown email, but said nothing about Shepardson, suggesting he had
not instructed them to delete or destroy the email.  The experts also could not be deposed
without risking waiver of the privilege, causing significant damage to the litigation.  The
trial court concluded:  "Mr. Shepardson's past disclosure and continuing use of the Brown
email will have a substantial and continuing effect on future proceedings in this action.
Mr. Shepardson is disqualified because his review and use of the Brown email goes
beyond a 'mere disclosure.'  . . . Mr. Shepardson elected to use the Brown email as part of

11

his case against CALTRANS prior to the resolution of the dispute regarding its nature. Mr. Shepardson read the Brown email; he reviewed it; he studied it; he evaluated it; he shared it; and, he incorporated its contents into the case and into his trial strategy. Having done so, Mr. Shepardson's continued participation in this case as JOHNSON's counsel raises the likelihood that use of the Brown email could affect the outcome of these proceedings both in terms of CALTRANS' rights against use of its privileged communications and in terms of the integrity of these judicial proceedings and public confidence in them."

The court vacated the trial date, and Johnson filed a notice of appeal.

DISCUSSION

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145.) "[U]ltimately the issue involves a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility. 'The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount . . . . [The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of our judicial process.' " (*Comden v. Superior Court* (1978) 20 Cal.3d 906, 915, second bracketed insertion in original.)

"A trial court's decision to grant or deny a motion to disqualify counsel is generally reviewed for abuse of discretion." (*O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1123; accord *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 819 (*Rico*).) " 'In exercising its discretion, the trial court must make a reasoned judgment that complies with applicable legal principles and policies.' " (*Clark v.*

12

*Superior Court* (2011) 196 Cal.App.4th 37, 46 (*Clark*).) " 'The order is subject to reversal only when there is no reasonable basis for the trial court's decision.' " (*Ibid.*) The trial court's express and implied factual findings are reviewed for substantial evidence. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, *supra*, 20 Cal.4th at p. 1143.) We draw all inferences in favor of the prevailing party and accept the trial court's resolution of conflicts in the evidence. (*Clark*, at pp. 46-47.)

## I.

An order on a motion to disqualify counsel is immediately appealable as a final determination of rights on a collateral matter. (*Meehan v. Hopps* (1955) 45 Cal.2d 213, 216-217.) As a threshold matter, however, Johnson argues that the trial court lacked jurisdiction to decide Caltrans's motion to disqualify. He maintains that the motion was barred by Code of Civil Procedure section 1008, which forbids renewed motions seeking "the same order" unless the moving party fulfills enumerated conditions that Caltrans did not satisfy here. Johnson posits that the motion to disqualify was a renewed motion as to: (1) the protective order because it sought to change the applicable *State Fund* standard and expand the protective order to cover Johnson's experts, and (2) the motion to enforce the protective order because that motion was denied as moot.

Code of Civil Procedure "[s]ection 1008 expressly applies to all renewed applications for orders the court has previously refused." (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 840.) Its purpose "is ' "to conserve judicial resources by constraining litigants who would endlessly bring the same motions over and over, or move for reconsideration of every adverse order and then appeal the denial of the motion to reconsider." ' " (*Id.* at pp. 839-840.) The statute is jurisdictional and the exclusive means for a party to renew a previous motion or to seek reconsideration of a prior order. (*Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 384; *Even Zohar Construction*, at p. 840.)

13

Code of Civil Procedure section 1008 does not apply in the circumstances present here. Caltrans's motion to disqualify did not seek reconsideration of the trial court's ruling on the motion for protective order. Contrary to Johnson's contention, the goal of the motion to disqualify was not to relitigate the trial court's application of *State Fund* and the court's observation that the Brown email may not have been "obviously privileged." Nor was Caltrans effectively attempting to disqualify the experts in the motion for protective order by seeking to prevent the dissemination of the email to them. The motions were seeking distinctively different relief based on different facts; the motion to disqualify was not a renewed motion under the statute. (See *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 43.)[1]

As to the motion to enforce the protective order, which the trial court denied as moot, Caltrans correctly notes that the trial court expressly left open the possibility of new or additional motions concerning violations of the protective order. And in any event, the relief sought in the motion to enforce the protective order—compliance with the protective order—was different than the relief sought in the motion to disqualify—the disqualification of Shepardson and the three experts. Accordingly, the motion to disqualify was not seeking the " 'same order' " as the motion to enforce the protective

---

[1] Johnson also suggests that Shepardson should not have been covered by the protective order in the first place because Caltrans's motion did not expressly seek relief against him. Johnson cites Code of Civil Procedure section 1010 and California Rules of Court, rule 3.1110(a), which require a notice of motion to state the nature of the relief sought in the motion and the grounds for the motion. The purpose of these requirements is to apprise the court and the adverse party of the legal issues in the motion; "[a]n omission in the notice may be overlooked if the supporting papers make clear the grounds for the relief sought." (*Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1125.) The notice and its accompanying papers make clear that Shepardson's role in the dissemination of the Brown email was at issue. Indeed, the introduction of the memorandum of points and authorities in support of the motion is largely devoted to Shepardson's actions. Moreover, the notice of motion requests a protective order covering "Plaintiff," and it is clear that term encompassed not only Johnson himself but also his agents, including Shepardson, in his capacity as Johnson's counsel.

14

order.  (*California Correctional Peace Officers Assn. v. Virga*, *supra*, 181 Cal.App.4th at p. 43.)

In his reply brief, Johnson notes a previous motion to disqualify Shepardson based on a conflict of interest and appears to argue that the motion to disqualify Shepardson and the experts was a renewal of the earlier motion to disqualify.  Johnson apparently made this argument before the trial court but did not raise it in his opening brief.  The argument is therefore forfeited, and we need not address it.  (*Varjabedian v. Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)

II.

Johnson next contends that the trial court's disqualification order lacked basis because the Brown email was not protected by the attorney-client privilege.  We disagree.

A.

"Protecting the confidentiality of communications between attorney and client is fundamental to our legal system.  The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring ' "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." ' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, *supra*, 20 Cal.4th at p. 1146.)  "The attorney-client privilege protects the transmission of information regardless of the content or whether the information is discoverable from other sources.  [Citation.]  It attaches to a confidential communication between the attorney and the client and bars discovery of the entire communication, including unprivileged material." (*DP Pham LLC v. Cheadle* (2016) 246 Cal.App.4th 653, 664; see Evid. Code, § 952.)

Corporate clients and public entities can claim the privilege.  (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 (*Costco*); *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 370; see Evid. Code, § 953.)  Attorney communications with agents

15

and employees of such entities may be covered by the privilege. (*Upjohn Co. v. United States*, *supra*, 449 U.S. at pp. 391-393; *D. I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723, 737 (*D. I. Chadbourne*).) "[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." (*Clark*, *supra*, 196 Cal.App.4th at p. 51.)

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship. [Citations.] Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." (*Costco*, *supra*, 47 Cal.4th at p. 733.)

" 'The question whether the attorney-client privilege applies to a particular communication is a question of fact if the evidence is in conflict.' [Citation.] ' "When the facts, or reasonable inferences from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court, and a reviewing court may not disturb such finding if there is any substantial evidence to support it." ' " (*DP Pham LLC v. Cheadle*, *supra*, 246 Cal.App.4th at p. 664.) "We presume the trial court knew and properly applied the law absent evidence to the contrary." (*McDermott*, *supra*, 10 Cal.App.5th at p. 1103.) A trial court is not required to make any specific findings to support its ruling. (*Ibid.*) We "review the court's order by inferring it made all favorable findings that are supported by substantial evidence." (*Ibid.*)

In this case, the trial court concluded that the Brown email was privileged because Brown was an attorney representing Caltrans, the email involved legal advice or information, and the nature of the relationship between Brown and Duncan was that of a Caltrans attorney obtaining information relevant to litigation from a Caltrans employee.

16

Substantial evidence supports these determinations. It is undisputed that Brown was an attorney for Caltrans. Brown stated that he sent the email to investigate Johnson's claims and defend Caltrans in that litigation. Brown also said that he intended his email to be privileged and confidential. The email bore a confidentiality notice. And the only relationship between Brown and Duncan stemmed from Brown's need to defend his client in litigation brought by one of Duncan's supervisees. These facts satisfied Caltrans's prima facie burden of showing the communication was made in the course of an attorney-client relationship. (See *Clark*, *supra*, 196 Cal.App.4th at p. 51 [substantial evidence of privilege shown by declarations stating documents were sent by company employee to company attorney].)

The burden then shifted to Johnson to show that the Brown email was not confidential or was otherwise unprivileged. (*Costco*, *supra*, 47 Cal.4th at p. 733.) Johnson claims that the "dominant purpose" of the email was not to advance Caltrans's legal interests but was instead to impugn him. The trial court rejected this argument, reasoning that the claim was "completely unsupported by any evidence." It concluded that the more likely explanation was that Brown intended to obtain "relevant information from Duncan." The trial court had the discretion to resolve this factual dispute, and the record amply supports its finding.

Johnson additionally argues that communications with Duncan were not covered by the attorney-client privilege because Duncan was only a low-level employee and Caltrans could not unilaterally create an attorney-client relationship. In *Upjohn*, the United States Supreme Court explained that the privilege may extend to communications with corporate employees, saying, "Middle-level—and indeed lower-level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." (*Upjohn Co. v. United States*, *supra*,

17

449 U.S. at p. 391; see also *Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1498.) Johnson incorrectly reads this to mean that only those employees who embroil their employers in serious legal difficulties fall within the protection of the privilege. The Supreme Court further explained that it is important for corporate lawyers to be able to exchange information with lower-level employees to adequately represent their corporate clients. (*Upjohn Co. v. United States*, *supra*, 449 U.S. at pp. 391-393.) *Upjohn* does not require lower-level employees to be the source of tortious behavior to be covered by the privilege. (*Id.* at pp. 391, 394.)

Johnson also points to *D. I. Chadbourne*, *supra*, 60 Cal.2d at pages 735-739, in support of his claim that the Brown email was not privileged. In that case, our state Supreme Court set out various guidelines for determining whether a communication from an employee to an entity's lawyer is protected. The guidelines differentiate situations where the employee is a named defendant, an independent witness, or a witness whose connection "grows out of his employment," among other examples. (*D. I. Chadbourne*, at pp. 736-737.) As an initial matter, the present case involves a communication from an attorney to an employee, not from an employee whose status within the corporation may be unclear. In any event, Johnson never explains why Duncan would qualify only as an "independent witness" or why Brown's communication with him would not fall within the ordinary course of Caltrans activity. (*Id.* at p. 737.) To the contrary, the only reason for Brown to contact Duncan was because of Duncan's position at Caltrans as Johnson's supervisor. In addition, *D. I. Chadbourne* explains that the corporate employer's "dominant purpose" when directing an employee to make a statement controls its privileged status, and "it is the intent of the person from whom the information emanates that originally governs its confidentiality (and hence its privilege)." (*Ibid.*; see *Costco*, *supra*, 47 Cal.4th at p. 735.) As explained above, there was adequate evidence to conclude that Caltrans's purpose, as carried out by Brown, was to investigate Johnson's claims for the purpose of litigation, and both Caltrans and Brown intended the

18

communication to be confidential. Johnson's conclusory allegation that the purpose of the email was to "mislead and damage" him is inadequate to controvert the trial court's findings.

Johnson further contends that the trial court should have conducted an in camera review of the Brown email. This argument fails because, with exceptions not relevant here, a "presiding officer may not require disclosure of information claimed to be privileged . . . in order to rule on the claim of privilege." (Evid. Code, § 915, subd. (a); *Costco*, *supra*, 47 Cal.4th at pp. 737-739.)

Finally, we reject Johnson's assertion, relying on *Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, that Caltrans is now attempting to unilaterally create a " 'sham' " attorney-client relationship. In *Koo*, a class of restaurant managers sued the corporate defendant for wage and hour claims. (*Id.* at p. 723.) Defense counsel made a statement in a declaration that his law firm represented all the class members as well as the defendant, and the plaintiff moved to disqualify defense counsel based on this apparent conflict of interest. (*Id.* at pp. 725-726.) Considering the distinction between representing the class members in their official capacities "as representatives of the corporation" versus in their individual capacities as current and prospective class members, the appellate court concluded that defense counsel could not "single-handedly create an attorney-client relationship" with "the managers in their individual capacities." (*Id.* at p. 730.) On the other hand, the statement that defense counsel represented the managers in "their representative capacities, as opposed to their individual capacities, was not entirely unfounded," because case law established that an attorney for a corporation represents both the corporation and its officers in their representative capacities. (*Id.* at p. 731.) The court noted, for instance, that plaintiff's counsel would be unable to have ex parte communications with company employees outside of the class action context, because those employees would have an attorney-client relationship with company counsel in their representative capacities. (*Id.* at p. 731, fn. 5.)

19

Here, Caltrans's counsel does not claim to represent Duncan in an individual capacity.  His role in the case is limited to his position as a supervisor for Caltrans, and Brown communicated with Duncan for the purpose of representing Caltrans.  *Koo* is therefore inapposite.

B.

Johnson also claims that Caltrans waived the attorney-client privilege, because Duncan gave the email to Johnson, Caltrans disclosed "a significant part of the communications," and Caltrans delayed in pursuing a motion for protective order.  We find no merit in these assertions.

A party may waive the attorney-client privilege over a "communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." (Evid. Code, § 912, subd. (a); *McDermott*, *supra*, 10 Cal.App.5th at p. 1101.)  A "significant part" of a communication means the party has revealed the "specific content" of or "substantive information" concerning the communication.  (*Southern Cal. Gas Co. v. Public Utilities Com.* (1990) 50 Cal.3d 31, 49; see also *Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 603 [no waiver where admission that client discussed matter with attorney "did not disclose any of the actual substance or content" of the communications].)  Consent may be shown by "any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has legal standing and the opportunity to claim the privilege."  (Evid. Code, § 912, subd. (a).)  Only the attorney's client, the holder of the privilege, may waive the privilege.  (Evid. Code, § 953; *McDermott*, at p. 1101.)  In the case of a corporation, the ability to waive the privilege "belongs to corporate management and is normally exercised by the corporation's officers and directors."  (*Melendrez v. Superior Court* (2013) 215 Cal.App.4th 1343, 1353-1354; *Commodity Futures Trading Com. v. Weintraub*, *supra*, 471 U.S. at p. 348; see also

20

*Wood v. Superior Court* (2020) 46 Cal.App.5th 562, 576.) "The privilege is not waived when the client's agent discloses a privileged communication without the client's authorization." (*DP Pham LLC v. Cheadle*, *supra*, 246 Cal.App.4th at p. 668.)

Waiver "does not include accidental, inadvertent disclosure of privileged information by the attorney" for the privilege holder. (*State Fund*, *supra*, 70 Cal.App.4th at p. 654.) To assess waiver, a court must consider the privilege holder's subjective intent. (*Id.* at pp. 653-654.) The disclosing party's "own characterization of its intent is not dispositive," however. (*Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1190; see also *McDermott*, *supra*, 10 Cal.App.5th at p. 1101.) Rather, the court should weigh "[o]ther relevant considerations," including "the precautions the holder took to maintain the privilege and the promptness with which the holder sought return of the inadvertently disclosed document." (*McDermott*, at p. 1102.) "The law does not require that the holder of the privilege take 'strenuous or Herculean efforts' to resist disclosure." (*Regents of University of California v. Superior Court* (2008) 165 Cal.App.4th 672, 683.) The question in assessing waiver is thus whether the holder of the privilege has pursued reasonable means to preserve the confidentiality of the information. (*Id.* at p. 681.)

Duncan's disclosure of the email to Johnson did not waive the privilege. As noted above, the privilege holder was Caltrans, as represented by its management. Nothing suggests Duncan fell within this group. Nor is there any evidence that Caltrans authorized Duncan to disclose the email. On the contrary, contemporaneous communications from Caltrans's counsel indicated that Duncan did "not have the authority to waive attorney-client privilege on behalf of [Caltrans]."

Contrary to Johnson's contention, Caltrans's disclosure of the confidentiality notice from the footer of Brown's email and its general description of the nature of Brown's communication to Duncan in its motion for protective order also do not constitute a revelation of a "significant part" of the email. (*Southern Cal. Gas Co. v.*

21

*Public Utilities Com.*, *supra*, 50 Cal.3d at p. 49.)  Neither disclosed the "specific content" or "substantive information" of the communication.  (*Ibid.*)

Substantial evidence also supports the trial court's conclusion that Caltrans did not consent to the disclosure by failing to pursue reasonable means to preserve the confidentiality of the Brown email.  The same day Shepardson informed Caltrans he had the Brown email, Caltrans's counsel notified him that the email was privileged.  Caltrans unequivocally invoked the privilege and asked Johnson and Shepardson to "delete or destroy the email."  That exchange was followed by additional meet-and-confer communications between Shepardson and Sims.  When those communications did not resolve the matter, Sims advised Shepardson on February 3, 2022 that Caltrans would be seeking a protective order if Johnson and Shepardson did not stop disseminating the email and destroy their copies of it.

We see nothing in the record or in case law to support Johnson's current contention that Caltrans waived the privilege because it did not "*immediately* file a motion for protective order" after receiving notice that the Brown email had been disclosed.  A same-day email invoking the privilege and requesting Johnson and Shepardson delete their copies of the Brown email qualifies as a reasonable and good faith measure taken to protect the Brown email's confidentiality, particularly because Caltrans was not on notice that Johnson and Shepardson intended to show the email to others until January 28, 2022.

After receiving that notice, Caltrans escalated its demands.  Sims's February 3, 2022 meet-and-confer letter not only repeated Caltrans's demand to delete the email but also asked Shepardson to confirm in writing the identities of the individuals to whom he had shown the email. At that point, trial was set for April 18, 2022.  The parties engaged in more correspondence before the trial court stayed the case on February 17, 2022; the stay remained in place for the next month and a half.  Sims filed a notice that he would be unavailable between July 1, 2022 and August 31, 2022, although it is unclear whether he

22

played any role in drafting the motion for protective order. Caltrans filed its motion for protective order on August 18, 2022. While it is true that Caltrans could have acted more expeditiously in filing its motion, its failure to do so does not demonstrate inappropriate delay, considering the shifting trial dates, the evolving actions Johnson and Shepardson took to further disseminate the email, and the prolonged meet-and-confer communications.

Johnson cites a number of cases, but they do not persuade us that Caltrans waived its privilege here. Both *People v. Perry* (1972) 7 Cal.3d 756, 783, overruled by *People v. Green* (1980) 27 Cal.3d 1, and *Mize v. Atchison, T. & S. F. Ry. Co.* (1975) 46 Cal.App.3d 436, 449 support the proposition that the attorney-client privilege can be waived if the holder does not object to disclosure of the privileged material, a proposition that Caltrans does not dispute. *United States v. De La Jara* (9th Cir. 1992) 973 F.2d 746, 749-750 and *AHF Cmty. Dev., LLC v. City of Dallas* (N.D. Tex. 2009) 258 F.R.D. 143, 149 involved instances of parties failing to take steps to recover or object to the use of privileged material; the former involved a seized letter from a defendant to his attorney, and the latter involved documents marked as exhibits in a deposition. In this case, by contrast, Caltrans consistently objected to the disclosure of the email.

We are also unpersuaded by Johnson's further claim that Caltrans waived the privilege by failing to bring legal action against Johnson's experts to whom Shepardson provided the email. Johnson cites no legal authority for this proposition. And in any event, Caltrans continuously and consistently sought to recover the email, including by demanding that Shepardson delete or return all copies of the email, which would reasonably be understood to include those copies Johnson and Shepardson distributed to the experts.

## C.

Finally, we reject Johnson's invocation of the crime-fraud exception. The attorney-client privilege does not apply "if the services of the lawyer were sought or

23

obtained to enable or aid anyone to commit or plan to commit a crime or a fraud." (Evid. Code, § 956, subd. (a).) " 'To invoke the Evidence Code section 956 exception to the attorney-client privilege, the proponent must make a prima facie showing that the services of the lawyer "were sought or obtained" to enable or to aid anyone to commit or plan to commit a crime or fraud.' " (*State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 643; see *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 213, fn. 4.) A "mere assertion of fraud is insufficient." (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1262.) We review a trial court's finding on the crime-fraud exception for substantial evidence. (*State Farm Fire & Casualty Co. v. Superior Court*, *supra*, at p. 645.)

The trial court found that Johnson had "failed to adduce *facts*" supporting any of his accusations of criminal or fraudulent behavior. In this court, Johnson's allegations of misconduct by Brown and Caltrans cite only to his own legal arguments filed in the trial court. To the extent that Johnson's trial court filings cite to Shepardson's declaration before the trial court, the declaration contains only conclusory statements and accusations. These are bare assertions of fraud and do not establish a prima facie case that the crime-fraud exception applies.

### III.

We turn now to Johnson's contention that the trial court erred when it granted Caltrans's motion to disqualify Shepardson and three expert witnesses. We reject this claim because the record supports the trial court's conclusion that Shepardson breached his ethical obligations by using and disseminating the Brown email. We further conclude that the trial court acted well within its discretion in determining that this conduct, and the resulting risk of harm to Caltrans and the integrity of the proceedings, warranted disqualification.

24

## A.

The "seminal California decision defining a lawyer's ethical obligations upon receiving another party's attorney-client privileged materials" is *State Fund*, *supra*, 70 Cal.App.4th 644. (*McDermott*, *supra*, 10 Cal.App.5th at p. 1106.) *State Fund* held: "When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged. The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders or other judicial intervention as may be justified." (*State Fund*, *supra*, 70 Cal.App.4th at pp. 656-657.)[2]

In *Rico*, *supra*, 42 Cal.4th 807, 817-818, our state Supreme Court approved the "*State Fund* rule" and extended it to documents covered by the work product privilege, describing the rule as a "fair and reasonable approach." (See also *Ardon v. City of Los Angeles*, *supra*, 62 Cal.4th at p. 1187 [California Supreme Court "embraced the *State Fund* holding in *Rico*"].) *Rico* described the *State Fund* rule as "an objective standard" that asks "whether reasonably competent counsel, knowing the circumstances of the

---

[2] These requirements were codified in rule 4.4 of the California State Bar Rules of Professional Conduct, which provides: "Where it is reasonably apparent to a lawyer who receives a writing relating to a lawyer's representation of a client that the writing was inadvertently sent or produced, and the lawyer knows or reasonably should know that the writing is privileged or subject to the work product doctrine, the lawyer shall: [¶] (a) refrain from examining the writing any more than is necessary to determine that it is privileged or subject to the work product doctrine, and [¶] (b) promptly notify the sender." The comments to the rule further state, "If a lawyer determines this rule applies to a transmitted writing, the lawyer should return the writing to the sender, seek to reach agreement with the sender regarding the disposition of the writing, or seek guidance from a tribunal." (Rules Prof. Conduct, rule 4.4, com. [1].)

litigation, would have concluded the materials were privileged, how much review was reasonably necessary to draw that conclusion, and when counsel's examination should have ended." (*Rico*, at p. 818.)

Once an attorney's examination shows that a document was transmitted between an attorney representing an entity-client and an officer or employee of that client, "that examination would suffice to ascertain the materials are privileged, and any further examination would exceed permissible limits." (*Clark*, *supra*, 196 Cal.App.4th at p. 53.) The opposing party's claim of privilege will also trigger the receiving attorney's *State Fund* duties. (*McDermott*, *supra*, 10 Cal.App.5th at pp. 1112, 1116 [objections of opposing counsel "constitute substantial evidence that [the receiving law firm] reasonably should have realized the [document] was an inadvertently disclosed, privileged document subject to the *State Fund* rule"].)

The consequence of the receiving counsel's failure to comply with his or her *State Fund* obligations can be disqualification, "assuming other factors compel" that remedy. (*State Fund*, *supra*, 70 Cal.App.4th at p. 657.) A trial court "may not order disqualification ' "simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings." ' " (*McDermott*, *supra*, 10 Cal.App.5th at p. 1120.) But an "affirmative showing of existing injury from the misuse of privileged information is not required." (*Ibid.*) Rather, the " 'significant question' " is whether there is a " 'genuine likelihood' " that the receiving counsel's review and use of the inadvertently disclosed materials will " 'affect the outcome of the proceedings before the court.' " (*Ibid.*; *Clark*, *supra*, 196 Cal.App.4th at p. 55.) " 'Thus, disqualification is proper where . . . there is a reasonable probability counsel has obtained information the court believes would likely be used advantageously against an adverse party during the course of the litigation.' " (*McDermott*, at p. 1120; see also *Rico*, *supra*, 42 Cal.4th at p. 819 [disqualification proper where receiving party's use of document placed opposing party "at a great disadvantage"].) Disqualification is also proper when an attorney's

26

continued representation "would undermine the integrity of the judicial process." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1205.)

We conclude the trial court properly disqualified Shepardson and the three experts after finding that *State Fund*'s obligations were not satisfied. First, the trial court correctly determined that Shepardson breached his *State Fund* obligations after he received the Brown email. When he received the email, Shepardson properly notified Caltrans. (*State Fund*, *supra*, 70 Cal.App.4th at p. 657.) But the record supports the trial court's conclusion that his actions thereafter fell short of what *State Fund* requires. After receiving the email, and especially after Caltrans unequivocally asserted the privilege hours after learning of the disclosure, Shepardson was not permitted to examine the email any further, much less distribute the email to other witnesses or use it to formulate case strategy, pending an agreement between the parties or judicial intervention. (*Id.* at pp. 656-657.) He nonetheless proceeded to do so, providing the email to Williamson, Duffy, and Simms, as well as at least five other individuals. He also announced his intention to use the email in the litigation, telling Caltrans he would be offering it into evidence at trial.

Second, Shepardson continued to use the Brown email after the trial court issued a protective order. The trial court's order determined that the Brown email was a protected attorney-client communication and forbade Shepardson and Johnson from further disseminating the email. Yet the trial court found that Shepardson "continued to refer to, disclose and discuss the Brown email." Substantial evidence in the record supports this finding. Shepardson also expressed his continued intent to offer evidence of the email at trial, asserting that the trial court's silence on the issue of witness testimony about the email meant that he was permitted to discuss the email and its contents with witnesses.

Third, the record supports the conclusion that there was a reasonable probability that Shepardson and the experts would continue to use the Brown email, or the information it contained, to unfair advantage against Caltrans. As noted, the trial court

27

found that Shepardson continued to use and discuss the email, even after the court determined the email was covered by the attorney-client privilege; he also declared his intention to solicit testimony about it at trial. At the same time, he offered shifting and uncertain assurances about the status of the email. In his April 2023 compliance declarations, for instance, he stated he had "removed all images of the Brown email that [he was] aware of, from hardcopy files, computers, phones and any other electronic devices." But none of the experts noted any such destruction of their copies of the email; and Duffy and Simms were under the impression that Caltrans had not sought the return or destruction of the email, saying Caltrans had "not served me with any motions seeking to return the email." This evidence supported the trial court's concern that not all the images of the Brown email about which counsel was aware had been removed or destroyed.

As for the experts, Williamson offered shifting explanations about whether the Brown email would play a role in his testimony. In his first declaration, he said it "would be difficult, and perhaps impossible, to give testimony . . . without consideration of the damaging email," but then later stated the email had "lessened in importance" and he could testify without it. Simms also stated that although she had not extensively reviewed the email, she "did find that it appeared retaliatory." In view of this record, substantial evidence supports the trial court's conclusion that there was a distinct probability that the email would be used to unfair advantage. The trial court did not abuse its discretion when it found similarly as to the three identified experts.

We reject Johnson's argument, relying on *McDermott*, *supra*, 10 Cal.App.5th 1083, that the trial court held Shepardson's actions to the wrong *State Fund* standard and that his "only duty was to notify opposing counsel of the [e]-mail," after which he was presumably free to use or disclose the email, pending action by Caltrans to protect it. In *McDermott*, the appellate court interpreted *State Fund* as "establishing two standards, with each one applying to slightly different situations": one, "when an attorney receives

28

materials that obviously or clearly appear to be privileged," and the other, "when an attorney ascertains that he or she received materials that are not obviously or clearly privileged, but nonetheless may be privileged materials that were inadvertently disclosed." (*Id.* at pp. 1108-1109.) Whether the Brown email was "obviously or clearly" privileged or "may" have appeared privileged upon receipt by Shepardson, Caltrans immediately invoked the privilege when notified, eliminating any question as to whether the holder asserted privilege over the document. (*Id.* at pp. 1108-1109, 1115.)

But even if the email was only potentially privileged, we disagree with Johnson that *McDermott* permitted him to use or disclose the email. While *McDermott* concluded that the receipt of "materials that are not obviously or clearly privileged . . . triggers a more limited response" than the receipt of "materials that obviously or clearly appear to be privileged," it does not state that a party who receives documents that are not clearly privileged may do whatever they wish with the documents after notifying the privilege holder. (*McDermott*, *supra*, 10 Cal.App.5th at pp. 1108-1109.) To the contrary, *McDermott* explained that "[a]llowing opposing counsel to avoid their *State Fund* obligations any time they can fashion a colorable argument for overcoming the privilege would create an exception that would swallow the *State Fund* rule. As *State Fund* and the other cases explain, an attorney's obligation is to review the materials no more than necessary to determine whether they are privileged, and then notify the privilege holder's counsel. At that point, the parties may confer about whether the material is privileged and whether there has been a waiver. If the parties are unable to reach an agreement either side may seek guidance from the trial court. [Citations.] The attorney receiving the material, however, is not permitted to act as judge and unilaterally make that determination." (*Id.* at p. 1113.) Once Caltrans asserted that the email was privileged, Shepardson was obligated to refrain from using it, absent agreement between the parties or a judicial resolution, even if he believed there was some basis for the email to fall outside the privilege.

The trial court's finding that Shepardson failed to comply with his *State Fund* obligations and the protective order is supported by substantial evidence. The trial court committed no abuse of discretion in disqualifying Shepardson and the experts after those obligations were breached.

B.

Johnson raises a variety of other arguments contesting the trial court's disqualification order, none of which is persuasive.

Johnson first contends that Caltrans unduly delayed in filing its motion to disqualify for tactical reasons and that it should have filed the motion as soon as it learned the Brown email had been disclosed. To waive a motion to disqualify counsel based on delay, the delay must be "extreme or unreasonable." (*Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 845.) The ensuing prejudice from the delay must also be extreme: "Even if tactical advantages attend the motion [f]or disqualification, that alone does not justify denying an otherwise meritorious motion." (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 599.)

As we have already concluded, Caltrans did not unreasonably delay in filing the motion for protective order. Caltrans also did not unreasonably delay in filing the motion for disqualification after the trial court issued the protective order. The trial court issued the protective order on January 3, 2023. That order gave Johnson and Shepardson 20 days to file declarations attesting to their compliance. One week later, this court stayed the case after Johnson filed a petition for writ of mandate, which was denied. After the stay was lifted, Johnson and Shepardson did not file the required declarations, and Caltrans sent a letter requesting compliance with the order by April 4, 2023. On April 3, 2023, Johnson filed another petition for writ of mandate with this court, which was again denied. Caltrans then filed a motion to enforce the protective order on April 17, 2023; Johnson and Shepardson filed the required declarations shortly thereafter.

The hearing remained on calendar for June 6, 2023, and Caltrans identified deficits in the declarations. The trial court instructed the parties to meet and confer about the contents of the declarations. The parties continued to meet and confer over the course of June, during which time Shepardson stated that he would be soliciting testimony about the Brown email at trial and could communicate with witnesses about the contents of the email. On June 30, 2023, Caltrans filed the motion to disqualify Shepardson and the expert witnesses.

None of these facts suggests an extreme or unreasonable delay on the part of Caltrans. After obtaining the protective order, Caltrans repeatedly attempted to obtain Johnson's and Shepardson's compliance, including by filing a motion to enforce the protective order after efforts at informal resolution failed. After receiving the compliance declarations and meeting and conferring with Shepardson, it became clear that Shepardson had disseminated the Brown email and its contents and still intended to use the email to his client's advantage at trial. At that point, Caltrans filed the motion to disqualify Shepardson. Notably, Caltrans also requested that the motion be heard on shortened time, given the pending trial date; Johnson opposed the request. The record demonstrates that any delays in filing the motion were the result of the prolonged meet-and-confer process, not because Caltrans was attempting to delay the motion for tactical advantage.

We likewise reject Johnson's argument that the trial court's order contained insufficient analysis of the prejudice Johnson would suffer as a result of Shepardson's disqualification. As an initial matter, Johnson situates this argument in a portion of his opening brief devoted to the assertion that Caltrans tactically delayed the filing of its motion. He makes his prejudice argument with a series of conclusory assertions that cite to the entire trial court order and does not provide any analysis explaining why the argument warrants reversal. "An appellant must '[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if

31

possible, by citation of authority.' [Citations.] Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.)

In any event, we see no error. A trial court is not required to discuss, at any length, every factor at issue in a disqualification motion. (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1734, fn. 6 ["A statement of decision . . . is not required for disqualification motions"].) And we presume the trial court knew and applied the law correctly, absent an indication to the contrary. (*McDermott, supra*, 10 Cal.App.5th at p. 1103.)

Moreover, the record supports the trial court's implicit finding that any prejudice to Johnson was outweighed by contrary considerations. The trial court's "paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra*, 20 Cal.4th 1135, 1145.) A client's right to select his or her own counsel "must yield to ethical considerations," such as "[p]rotecting the confidentiality of communications between attorney and client." (*Id.* at pp. 1145, 1146.) As detailed above, substantial evidence supports the conclusion that the Brown email was a privileged attorney-client communication, that Shepardson violated his duties as to that communication, and that there was a reasonable probability he would use the communication for unfair advantage. Under these circumstances, the trial court appropriately exercised its discretion in ordering disqualification.

Johnson further argues that there is a "rule" that disqualification is unwarranted when the disclosed document is received from the disqualified attorney's own client because the client could simply disclose the document to any future attorney, frustrating the goal of disqualification. As with the previous argument, Johnson's brief does not include any analysis or explanation regarding this claim. In any case, Johnson's argument was rejected in *Militello v. VFARM 1509* (2023) 89 Cal.App.5th 602, 621-622.

There, the appellate court observed that while it is true that courts "cannot effectively police what a client, after reading or hearing another party's confidential communications, chooses to tell his or her lawyer," it is an entirely different matter to permit an attorney who has improperly used confidential material to continue with the representation. (*Ibid.*) To allow such representation to continue "would undermine the public's trust in the fair administration of justice and the integrity of the bar." (*Id.* at p. 622.) We agree with this conclusion.

Disqualification of a party's chosen counsel may impose hardships on the party, who must then seek new counsel in an already pending case. But a party's choice of counsel may be outweighed by a court's overarching duty to preserve the integrity of the judicial process, through both compliance with ethical rules and the maintenance of public confidence in the proceedings. (*Comden v. Superior Court*, *supra*, 20 Cal.3d at p. 915.) In this case, Shepardson's failure to comply with his ethical duties through his continued use of confidential material created a substantial risk of undue prejudice and risked undermining the integrity of the proceedings. We therefore have little difficulty in concluding the trial court did not abuse its discretion when it disqualified him.

DISPOSITION

The trial court's order disqualifying Shepardson and the expert witnesses Williamson, Duffy, and Simms is affirmed.  Caltrans shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)**3**

/s/
FEINBERG, J.

We concur:

/s/
HULL, Acting P. J.

/s/
WISEMAN, J.*

---

**3** In the conclusion of his opening brief, Johnson includes a single sentence also asking this court to reassign the case to another judge under Code of Civil Procedure section 170.1, subdivision (c).  The request is not set forth under a separate heading or accompanied by any argument, and we do not consider it.  (See Cal. Rules of Court, rule 8.204(a)(1)(B); *Swallow v. California Gambling Control Com.* (2022) 77 Cal.App.5th 1037, 1041, fn. 3.)

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.